W. E. MOTLEY, IN BEHALF OF HIMSELF AND OTHER DULY LICENSED BARBERS IN THE STATE OF NORTH CAROLINA; (AND WILLIE COX AND R. D. ELLINGTON, ADDITIONAL PARTIES PLAINTIFF), v. THE STATE BOARD OF BARBER EXAMINERS, J. M. CHEEK, CHAIRMAN, M. B. BERRY, MEMBER, A. M. McCOY, MEMBER, AND R. P. BRANCH, EXECUTIVE SECRETARY; AND RALPH E. YOUNG.

(Filed 10 December, 1947.)

**1. Injunctions § 1—**

Licensed barbers in their individual capacity may not challenge the constitutionality of Chap. 941, Session Laws of 1947, by injunction upon the ground that the granting of licenses to returned veterans under the provisions of the statute would tend to lower the standards or destroy the

security of the trade, since there is no allegation of specific injury to personal or property right sufficient to invoke equitable jurisdiction.

**2. Injunctions § 2—**

Licensed barbers may not attack the constitutionality of Chap. 941, Session Laws of 1947, by injunction on the ground that the granting of licenses to returned veterans under the provisions of the act would result in unlawful competition which would diminish their income from the trade, or even amount to its confiscation, since if the act is unconstitutional there is adequate remedy by prosecution of interlopers.

**3. Same—**

Suit by an experienced barber who had applied for and was refused license for failure to pass the examination of the Board of Barber Examiners, to enjoin the Board from issuing licenses to returned veterans without an examination under the provisions of Chap. 941, Session Laws of 1947, is determined upon its merits.

**4. Barbers § 1: Judgments § 30—**

The validity of the statute providing for the licensing of barbers and the control and regulation of the trade having been judicially determined, the validity of the act may not be attacked in a subsequent suit.

**5. Constitutional Law § 12—**

The restraints and regulations placed upon the practice of a trade or profession in the interests of sanitation, public health and the standards of the trade or profession, are matters of public policy within the control of the Legislature within constitutional limitations.

**6. Constitutional Law § 18—**

The Constitution of North Carolina does not preclude the Legislature from making classifications and distinctions in the application of laws provided the classifications are reasonable and just and are not arbitrary. Constitution of North Carolina, Art. I, sec. 1; Art. I, sec. 7; Art. I, sec. 17.

**7. Constitutional Law § 10b: Statutes § 6—**

The Supreme Court may not exercise its power to declare a statute unconstitutional and void unless it is clearly so.

**8. Constitutional Law § 18—**

The rehabilitation of returning soldiers is a matter of public concern, and statutes giving them exclusive benefits or privileges in furtherance of this public policy will be reconciled with constitutional limitations whenever possible.

**9. Constitutional Law § 17—**

Service in the armed forces during war is a public service within the meaning of Art. I, sec. 7, of the Constitution of North Carolina, for which exclusive or separate emoluments or privileges may be granted.

**10. Same—**

The Fourteenth Amendment to the Federal Constitution does not preclude a state from providing preferential treatment in the licensing of

veterans to carry on a particular trade or profession upon the payment of the same fees as prescribed for all others engaged in the trade or profession.

**11. Same—**

The Legislature may prescribe classifications for the licensing of persons engaged in particular trades or professions provided the classifications are not arbitrary and have reasonable relation to the end sought.

**12. Same:  Barbers § 1—**

The provisions of Chap. 941, Session Laws of 1947, that veterans of World War I or World War II who have practiced barbering for three or more years prior to application, are eligible for license without standing the examination required by the general law, G. S., Chap. 86, prescribes a reasonable classification and is valid.

PLAINTIFF's appeal from *Grady, Emergency Judge,* at May Term, 1947, of WAKE.

Chapter 86 of the General Statutes, entitled "Barbers," sets up for its administration a State Board of Barber Examiners, 86-6, defines the practice of barbering, 86-2, provides for the issuance of certificates of registration, 86-1, and establishes the conditions under which they shall be issued. 86-3, 86-5, 86-15, and prohibits and denounces the practice of barbering without a certificate and prescribes punishment therefor, 86-1, 86-22, subsections 1 to 11.  Under Sec. 86-12 temporary permits by the Board may be given to persons who have practiced barbering in another state or county for two years and who shall demonstrate their fitness to the Board.

The Board is required to give examinations four times a year, including such practical demonstration and oral and written tests as the Board may determine, sec. 86-10.

Sections 86-4 and 86-5 require that the applicant for admission must have worked as a registered apprentice under a registered barber for at least eighteen months before becoming eligible for a certificate as a registered barber.  The designation "registered barber" and holder of a barber's "certificate" mean the same.

An amendment to the "Barbers" Act was made in Chapter 941 of the Session Laws of 1947, making veterans of World War I and World War II who have had three years prior experience in barbering eligible to demand certificates and become registered barbers, and practice the trade without the examination and apprenticeship otherwise required for admission by paying the fees prescribed in the Act.

The defendant Young, complying with the amended law, tendered his fees and demanded a certificate.  The plaintiff Motley brought this action to enjoin the defendant Board of Barber Examiners from issuing the

certificate, joining Young as party defendant, and obtained a temporary restraining order.

On motion of counsel for plaintiff, Willie Cox and R. D. Ellington were made parties plaintiff.

It appears from the complaints filed separately by the plaintiffs that W. E. Motley is and has long been a registered barber, enjoying the full benefits and protection of the act.  He complains that the admission of the defendant Young as a registered barber and into the practice would be an unconstitutional discrimination against him and others licensed in that it would deny him the enjoyment of the fruits of his labor, confer upon the defendant Young a discriminatory privilege denied by the Constitution, deprive him of a property right, and deny him equal protection of the laws, citing the provisions of the State and Federal Constitutions supposed to be involved; and that he and other licensed barbers will suffer irreparable injury, since the effect would be to destroy the security of plaintiffs' trade or profession and will lessen the confidence of the public in the barbering profession as set up under the law.  He further pleads that he has a proprietary interest in the Carolina Hotel Barber Shop, which, he contends, gives him an actionable interest in the suit.

The plaintiff Cox adopts the complaint of Motley and adds thereto that he has been practicing as a registered barber under the Act for many years, was compelled to undergo examination to acquire that privilege, and that the admission of Young and other veterans under the provisions of the amended law and without examination would be an unlawful discrimination and deny him the equal protection of the law.

The plaintiff Ellington complains that while he had practiced barbering for many years, he has tried three times to procure a certificate from the Board and each time was unable to pass the examination; and that the admission of Young under the conditions of the amended law would be, against him, an unconstitutional discrimination and a denial of the equal protection of the law.

The defendant Board of Examiners, while they indicate they will obey the law if so required, join with the plaintiffs in resisting the demands made under the Act as contrary to the welfare of the public, lowering the standards of sanitation and health, and contend that the statute is discriminatory and unlawful.

The defendant Young sets forth his compliance with the amended law, and maintains its constitutionality.

The matter came on for a hearing before Judge Henry A. Grady at May Term, 1947, of Wake Superior Court, who, after hearing evidence and argument dissolved the restraining order and dismissed the action. The plaintiffs appealed.

MOTLEY *v.* BOARD OF BARBER EXAMINERS.

*Harris & Poe and Logan D. Howell for plaintiffs, appellants.*
*J. Frank Huskins and N. F. Ransdell for defendant Ralph E. Young, appellee.*

SEAWELL, J.   The array of parties plaintiff has given rise to some doubt as to their community of interest in the subject matter of the proceeding; and considered individually their standing in court as qualified suitors for equitable relief has been challenged.

The plaintiffs Motley and Cox are registered barbers of long standing and the complaint that they are discriminated against because they were compelled to stand examination while the defendant Young and others in his class are not so required, without further allegation of injury would seem merely reminiscent. In that respect the gist of Cox's grievance, as alleged, is that the admission of the defendant Young and other veterans to practice barbering without examination "would tend to lower the standards of the barbering trade . . . resulting in irreparable injury to this plaintiff in the practice of his chosen trade." The plaintiff Motley complains that the illegal admission of the defendant Young and other veterans similarly privileged "would destroy the security of plaintiff's trade or profession" as guaranteed by the statute, G. S., Chapter 86; and that he is the owner of the Carolina Hotel Barber Shop in Raleigh and has built up an established business; and that his interest therein gives him an actionable interest in the proceeding. Neither of these plaintiffs alleges a specific injury to a personal or property right such as may be in need of equitable protection; but we may gather from the suggestions made in the argument and the brief that the objection is directed towards an unlawful competition which may affect them by diminishing income from the trade or business, or even amount to its confiscation. Even so, it is difficult to understand how there is an immediate threat to such rights or how the admission of Young to practice in the County of Yancey, where, according to the record there are 18,000 people and only two registered barbers, could affect the number of persons seeking hirsute curtailment in Wake, and reduce their daily take. It is pointed out that if the attempt of the Legislature to open the door to these veterans is null and void, there is adequate protection afforded them already through the prosecution of interlopers. *S. v. Lockey,* 198 N. C., 551, 152 S. E., 693.

However, the status of Ellington, who is experienced at the trade and has tried the Board three times for his certificate and failed, presents a different bid for recognition. While there may remain some doubt as to his relation to the cause of action he seeks to assert, we prefer to consider the matter upon its merits without passing upon that question; and in so doing the constitutional questions posed by his co-plaintiffs and the defendant Board will necessarily have attention.

Counsel 'for the defendant Young has thrown into the hopper as a serious question how far the Legislature may go in withdrawing from the public the opportunity of employment in what has heretofore been considered an ordinary trade or occupation by erecting it into an autono- mous guild, with a Board selected from its members, vested with practical control of admission by the enforcement of conditions and rules so highly restrictive, it is contended, as to promote a monopoly; and points out the power of this board in selecting barbers' colleges, examination of appli- cants who must demonstrate tonsorial skill, manifest requisite medical knowledge, and must serve at least 18 months in apprenticeship to a registered barber before entering the trade. However, since *S. v. Lockey, supra,* that problem is no longer in the hands of the Court. But it is true that the questions of sanitation, public health and standards of the trade or profession urged upon us in defeat of the statute are matters of public policy within the control of the Legislature and not available to the plaintiffs in support of their present proceeding; and the same authority which conferred upon the Barbers Board the power to deter- mine conditions of admission to the trade, or established them, may repeal them, or alter them, or provide alternative conditions of admission unless plainly forbidden by the Constitution. We are of the opinion that the 1947 amendment admitting qualified veterans to the trade is not neces- sarily of that character.

The plaintiffs ground their attack on the amending statute upon Article I, Sec. 1, of the North Carolina Constitution, providing "that all men are created equal and are endowed by their Creator with certain inalienable rights, including the enjoyment of the fruits of their own labor"; Article I, Sec. 7, providing "that no man or set of men are entitled to exclusive or separate emoluments or privileges from the com- munity but in consideration of public service"; Article I, Sec. 17, pro- viding "that no person ought in any manner to be deprived of his life, liberty or property but by the law of the land"; and upon the 14th Amendment to the Constitution of the United States providing "that no state shall make or enforce any law which shall abridge the privilege or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the law."

These provisions of the Constitution are not so naive as not to con- template the classifications and distinctions which orderly government is required to make with respect to the subjects of its control. "Dis- crimination" does not ordinarily connote unfairness nor can it be used as a label to disqualify and condemn a statute as "class legislation." It is only when the classification, or the distinction, is arbitrary and unjusti- fiable upon any reasonable view that it becomes invidious and offensive to

the Constitution, so that the Court may undertake to exercise the extraordinary power it possesses to declare the statute void. The Unconstitutionality must clearly appear before the Court can so declare it. *Brumley v. Baxter,* 225 N. C., 691, 36 S. E. (2d), 281; *S. v. Brockwell,* 209 N. C., 209, 183 S. E., 378.

From the beginning of civilization and before written constitutions were conceived, nations and governments have recognized an obligation to those who have fought in the Armed Forces in defense of their country and in the preservation of its institutions. It is part of the *mores,* running parallel with the Constitution and demanding reconciliation of its provisions wherever it may be possible. For that reconciliation we must look to the purpose of the statute and its relation not only to the soldier intended to receive its benefits but to the necessities of government itself.

The custom is not based altogether on sentiment or gratitude, or even common justice to the soldier, but it involves other considerations both practical and compelling: The fact that the incidence of war is not wholly borne by those in the military service but falls heavily on the social and economic life of the state or nation, because of their enforced absence and the handicaps under which they labor when they return. It is an inevitable sequence of war that there will be found in the growth of our institutions, as well as in the life of these people, the lean, hard ring of winter. We are, therefore, dealing with a principle of security without which a nation, and particularly a democracy, could scarcely move from peace to war, or again from war to peace, without injustice and disruptions which would mar, if not imperil its social and economic life.

The rehabilitation of the returned soldier is a matter of public concern throughout the nation, and the present relief which the challenged amendment intends for the qualified veteran may be correlated with that necessity.

During the recent World War around 10,000,000 men and boys, largely in the preparatory period of life or its early productive experiences, were inducted into the Army and deprived of all the privileges and opportunities which peacetime occupations could afford and which were freely enjoyed by the noncombatant civilian at home. It is a simple matter of equality and justice to them that these opportunities may in a measure be restored to them, and that the handicaps which have been suffered should be removed, and it is of importance to the continued peace and prosperity of the nation that they should be seasonably returned, in an orderly way, to self-supporting occupations and to the productive enterprises essential to the public welfare and progress. In *Fishgold v. Sullivan Drydock & Repair Corp.,* N. Y., 1946, Supreme Court 1105, 90

L. Ed., discussing the Selective Service Act of 1940, it is said that the purpose of the section considered was designed to protect the veteran by preventing him from being penalized on his return by reason of his absence from his civilian job and *by giving him an advantage which the law withheld from those who stayed behind.*

Article I, Sec. 7, of the Constitution which forbids the granting "of exclusive or separate emoluments or privileges from the community but in consideration of public service" contemplates that the privileges, both "separate" and "exclusive" may be given "in consideration of public service" and the history of its adoption is no doubt impressed with the custom to reward in this way men who have borne arms in the service of the country,—and it is most often cited in that connection. Such services are within the definition of the Constitution, *Brumley v. Baxter, supra; Hinton v. State Treasurer,* 193 N. C., 496, 137 S. E., 699. It is also extended to public non-combatant services, *Bridges v. Charlotte,* 221 N. C., 472, 20 S. E. (2d), 825. Since the privileges so extended are exclusive it follows that others are excluded from their exercise. What *privileges* may the State grant to returned veterans more important than the return to the peaceful occupations of life from which they have been excluded?

Practically all the States in the Union from which men have been drafted for military service have given to returned veterans preferential treatment, in many instances of a more discriminatory character than the privileges conferred by the challenged statute. These have ranged from bonuses, loans, to free education in state-supported schools, both of the veteran and his children; immunity from duties imposed upon others, and a wide variety of privileges not exercised by the general public. It will be helpful in studying and comparing their character and extent to refer to "Veterans Benefits," West Publishing Co. (1946), and "American Law of Veterans," by Kimbrough & Glen, Lawyers Cooperative Publishing Co. (1946), in both of which may be found illustrations and analyses with a list of the states concerned.

The questions with which we are dealing here are very fully and ably discussed in *Valley National Bank of Phoenix v. Glover, et al.,* 159 P. (2d), 292. Almost every phase of the present controversy is considered in that opinion and the argument is convincing. See pp. 298, 299, 300.

In its underlying principle of decision we believe that *Hinton v. State Treasurer,* 193 N. C., 496, 137 S. E., 669, should be controlling of the issues presented on this appeal. In that case an action was brought to restrain the defendants, including the State Treasurer, from carrying out the provisions of Chapter 155 of the Public Laws of 1925, known as the "World War Veteran Loan Act," and the sections of the Constitution supposed to be invaded are those upon which the plaintiffs rely in the instant case. This case is replete with references to pertinent cases from other jurisdictions to which space permits only this reference.

The 14th Amendment to the Federal Constitution has not prevented Congress from insuring bonds of veterans, a practice which, if the position of the plaintiffs is correct, would promote discrimination inside the State; or from expressing the hope that the states in their public employment would recognize the propriety of preferential treatment of veterans accorded by the Selective Service Act, Sec. 308 (c): "If such position was in the employ of any state or political subdivision thereof it is hereby declared to be the sense of the Congress that such person should be restored to such position or to a position of like seniority, status and pay."

We are not dealing here with questions of civil service or license fees as a contribution which must be made to the State with respect to occupation or employment. As to both there is a division of authority as to the effect of veteran preferment. The most outstanding cases cited to us involve arbitrary classification which would exclude from the benefits of the act part of the class which by the recognized service would be entitled to it. *Ex Parte Jones,* 43 S. W., 513; *Lawrence v. Anderson,* 75 S. E., 62; *Adams v. Standard Oil Co.,* 97 Miss., 879, 53 So., 692. These cases are mentioned because they have no doubt given rise to the objection made by the plaintiffs that we are dealing with a "class within a class" since only certain qualified veterans were included in the benefits of the statute.

However, the Legislature may extend the process of classification as far as it deems proper for the purpose of applying the law unless the classification becomes capricious, arbitrary, and without reasonable relation to the end sought. At any rate, the plaintiffs are not in position to raise the objection.

The Constitution does not require a competitive examination to be admitted to the practice of barbering, as in *Barthlemess v. Cukor,* 231 N. Y., 485, 132 N. E., 140, 16 A. L. R., 1404, where civil service was involved. Here examination is the result of the statute; and we are strongly inclined to the view that the provision in the statute for the admission of qualified veterans with three years previous experience in barbering is based upon a sufficient finding of fitness which the Legislature, in its appraisal both of the necessities of the trade and the experience of the veteran, might substitute for the examination required by the Act without serious invasion of the rights of the plaintiffs. A careful consideration leads us to the conclusion that the challenged statute was fully within the legislative discretion and no provision of the Constitutions cited has been violated in its enactment. *Hinton v. State Treasurer, supra; Brumley v. Baxter, supra.*

The judgment below, therefore, is

Affirmed.