VICTORY CAB CO., INC., A CORPORATION; BEATY SERVICE CO., INC., A CORPORATION; CLAYTON MOSER; JOHN HELMS; JAMES P. ALLISON; CARL W. HINSON; H. L. JOHNSON; M. B. SMITH; WILLIAM BUFORD SEAGRAVES; KERMIT W. HOWARD; ERNEST E. SMITH; JAMES G. HARMON; L. E. CRUMP; E. D. RICE; EARL HUBBARD; FRANK E. SAUL; WARREN H. BENTLEY; OTTO GOODWIN; T. E. HOLCOMB; TROY L. BROWN; C. M. ALLISON; FRED KING, JR.; HOWARD ANGLE; LLOYD L. FRANTZ; J. B. CRUMP; JESSIE J. HARGETT; FRED ALLEN; R. R. WINGATE; JACK REYNOLDS; F. O. KING; WILLIAM JOE KING; REECE M. HARTSELL; I. L. BAKER; D. D. WHITWORTH; A. L. STACEY; EARL SHEAFF; GEO. FESPERMAN; V. A. AUSTIN; C. D. WORLEY; WILLIAM J. JOHNSON, SR.; H. S. HASSEN; A. HENDERSON; JAMES Q. DUNCAN; H. M. ALLMAN; W. R. HUGHES; M. C. SMITH; H. P. WENTZ; J. N. KIZIAH; E. H. AUGHTRY; J. W. PATE; A. W. QUICK; H. O. ROSS; J. P. AUGHTRY; N. A. WARREN; JOHN P. BEATY; WILLIAM C. HARGETT; H. A. MANUS; H. G. THORNTON; E. L. GIBSON; WILLIAM NORKETT; M. C. STARNES; H. L. ROWLAND; CHARLES BRADSHAW; R. C. BROWN; EDGAR R. BAKER; J. R. TODD; F. A. HUNSUCKER; D. M. GEER; W. W. BUFF; MARVIN N. WARD; W. J. TRULL; F. R. ALLEN; R. H. REICHARD, AND OTHERS IN LIKE POSITION, PLAINTIFFS, v. VICTOR SHAW, MAYOR; FRANK N. LITTLEJOHN, CHIEF OF POLICE; H. G. CLEVELAND, CAB INSPECTOR; HENRY A. YANCEY, CITY MANAGER; G. DOUGLASS AITKEN, COUNCILMAN; CLAUDE L. ALBEA, COUNCILMAN; BASIL M. BOYD, COUNCILMAN; WILLIAM I. CODDINGTON, COUNCILMAN; JAMES H. DAUGHTRY, COUNCILMAN; S. R. JORDAN, COUNCILMAN; EMMETT M. WILKINSON, COUNCILMAN; AND THE CITY OF CHARLOTTE, DEFENDANTS.

(Filed 24 May, 1950.)

**1. Municipal Corporations § 40—**

A municipal ordinance promulgated in the exercise of the police power will not be declared unconstitutional unless clearly so, and every reasonable intendment will be made to sustain it.

**2. Municipal Corporations § 36—**

Obligations of contracts and vested rights must yield to the proper exercise of the police power, which, nevertheless, must not be exercised arbitrarily or oppressively, and must be reasonably related to the accomplishment of a public purpose.

**3. Municipal Corporations § 39—**

A municipal corporation has the power in regulating the privilege of using its streets for the operation of taxicabs, to prohibit franchise holders from leasing or renting its vehicles for such purpose to independent contractors, even though they are duly licensed and qualified taxicab drivers. G.S. 160-200.

PLAINTIFFS' appeal from *Bobbitt, J.,* December 3, 1949, MECKLENBURG Superior Court.

The corporate plaintiffs and certain of the individual plaintiffs are owners of motor taxicabs and holders of franchises (termed certificates of public convenience and necessity by the City Code), granted by the City of Charlotte to privilege the operation of such vehicles for hire in and around the municipality. The corporate plaintiffs rent such vehicles to others of the individual plaintiffs, at a fixed daily rental, for operation of the vehicles for hire, and have done so for a number of years. The corporate plaintiffs furnish the taxicabs with their own respective trade names painted thereon, with all lights, fixtures and appliances required by ordinance being attached thereto; keep the vehicles in mechanical order, service them except for gasoline, and insure them against property damage and personal injury. The drivers, as independent contractors, are supervised by personnel of the owner corporation in order to assure the observance of the city ordinances pertaining to the operation of taxicabs. The taxicabs have been inspected and approved and all regulations with respect to taxes and fees have been complied with by the plaintiffs.

On June 11, 1946, the Council of the City of Charlotte adopted an ordinance, (brought forward in the City Code of Charlotte, Chapter 3, Article VI, Sec. 6,) and it was later amended to become effective midnight October 31, 1949. The ordinance provides:

> "OPERATOR TO BE OWNER OR EMPLOYEE THEREOF. (a) No taxicab shall be operated except by the owner thereof or by a duly authorized agent and employee of the owner, to whom such owner pays a fixed and definite wage or a fixed commission or percentage of the gross amount received from the operation of such taxicab or a combination wage and commission.
>
> "(b) No owner of any taxicab shall enter into any contract, agreement, or understanding with any driver by the terms of which such driver pays to such owner a fixed or determinable sum per day for the use of such taxicab and is entitled to all, or a portion of the proceeds of operation over and above the fixed or determinable sum. Nothing herein contained shall prevent an owner from paying a fixed fee or other compensation to another owner for furnishing insurance required by this Chapter, for use of terminal facilities and/or for the privilege of operating under the name of such other owner."

Prior to the effective time of the ordinance, plaintiffs brought action to perpetually enjoin and restrain defendants from the enforcement of the quoted ordinance.

The hearing of the order to show cause was upon the complaint and answer, affidavits and stipulation of counsel, from which the foregoing facts emerge as determinative of the controversy and are in accord with

and substantially included *inter alia* in the findings of fact. After finding the facts Judge Bobbitt made the following conclusions of Law:

"1. That those individual plaintiffs who own franchises in their own right are permitted by the terms of Article VI, Sec. 33 (b) to pay 'a fixed fee or other compensation to another owner for furnishing insurance required by this Chapter, for use of terminal facilities and/or for the privilege of operating under the name of such other owner.'

"2. That the City of Charlotte, through its City Council, has authority to grant franchises covering the operation of taxicabs on such terms as it deems advisable; that Article VI, Section 33, of said Ordinance, is a valid exercise of such authority.

"3. That the challenged provisions of said Ordinance, so far as the evidence discloses, do not affect adversely those individual plaintiffs who own franchises.

"4. That the corporate plaintiffs, as owners and holders of franchises, are attempting to exercise their rights thereunder, not through operators who are their agents and employees while in charge of and while operating their taxicabs, but through operators who lease the equipment of the corporate plaintiffs and pay therefor and for prescribed services and benefits a flat sum per diem as rental, irrespective of the extent of operation and of total fares collected and who operate as their individual enterprises without disclosure or accounting for their aggregate receipts from the public, and in doing so are violating Art. VI, Section 33, of said ordinance.

"5. That it is within the authority and discretion of the City Council of the City of Charlotte to determine that it is reasonable and necessary in the public interest, and for the proper supervision and regulation of the taxicab business in the City of Charlotte, that the owners and holders of taxicab franchises conduct their business, in so far as the operation of the taxicabs is concerned, solely through persons who occupy unequivocally and without question the status of agents and employees.

"6. That the aforesaid practices of the corporate plaintiffs constitute in effect a 'farming out' or leasing of their franchise privileges to those who, in their own right, own no franchise evidenced by certificate of public convenience and necessity.

"7. That the validity of the ordinance requirement as to the methods by which a franchise holder may compensate its agents and employees is not before the Court, since it does not appear that any of the individual plaintiffs under present practices are agents and employees of the corporate plaintiffs.

"8. That the City of Charlotte, through its City Council, incident to the exercise of its power to establish taxicab rates, has the authority to provide by ordinance that the holders of taxicab franchises shall maintain such practices and keep such records as will disclose from their records the total fares collected from the operations of their several cabs.

"9. That the provisions of Article VI, Section 33, of the Ordinance, as applied to the plaintiffs, are not unreasonable, arbitrary, or oppressive.

"10. That while it appears that the City Council has determined that the provisions of Art. VI, Sec. 33, should be enforced commencing Nov. 1, 1949, it does not appear from the evidence how or to what extent, if any, the enforcement of Article VI, Sec. 33, will be attempted in relation to the status of each of the several plaintiffs herein."

Thereupon he entered the following judgment:

"1. That Article VI, Section 33, of the Ordinance, as applied to the plaintiffs herein, is valid.

"2. That the plaintiffs' alleged threatened injuries and damages are speculative and not irreparable; and that under the facts the plaintiffs are not entitled to injunctive relief.

"3. That the temporary restraining order signed by his Honor, A. R. Crisp, bearing date of October 31, 1949, be, and is dissolved.

"4. That in view of the fact that the corporate plaintiffs, in order to comply with the provisions of Article VI, Section 33, will be required to make adjustments in their practices of operation, and in order to insure uninterrupted taxicab service to the public, this order dissolving as aforesaid the temporary restraining order of October 31, 1949, shall be deemed effective as of midnight, December 31, 1949."

From the ruling of the court below the plaintiffs appealed and contend that the Council of the City of Charlotte is without legal authority to enact the disputed ordinance and that the General Assembly is without authority to confer any such power on the City of Charlotte; that the purpose of the ordinance is not in any proper manner in the interest of the health, convenience and welfare of the public, but seeks to impose an unnecessary and arbitrary rule on the terms of employment, and means of payment and accounting in the business of the plaintiffs; that such ordinance is in violation and impairment of existing contracts between the plaintiffs, in direct violation of the 5th and 14th Amendments to the

Constitution of the United States and Article I, Sections 1 and 17, of the Constitution of the State.

· *Henry L. Strickland, J. F. Flowers, and W. M. Nicholson for plaintiffs, appellants.*

*John D. Shaw for defendants, appellees.*

SEAWELL, J. The exhaustive opinion of *Barnhill, J.,* in *Suddreth v. Charlotte,* 223 N.C. 630, 27 S.E. 2d 650, obviates a recapitulation of the delegation by the General Assembly to the City of Charlotte of the authority with respect to the regulation of taxicabs. Since that opinion was rendered G.S. 160-200 has been amended to provide, *inter alia,* that a municipality "may grant franchises to taxicab operators upon such terms as it deems advisable."

In the case of *S. v. Stallings,* 230 N.C. 252, *Denny, J.,* speaking for the Court, said: "In the exercise of this delegated power it is the duty of the municipal authorities in their sound discretion, to determine what ordinances or regulations are reasonably necessary for the protection of the public or the better government of the town; and when such ordinance is adopted, it is presumed to be valid; and, the courts will not declare it invalid unless it is clearly shown to be so." *Motley v. State Board of Examiners,* 228 N.C. 337, 45 S.E. 2d 550, 175 A.L.R. 253; *Brumley v. Baxter,* 225 N.C. 691, 36 S.E. 2d 281, 162 A.L.R. 930; *Chimney Rock Co. v. Town of Lake Lure,* 200 N.C. 171, 156 S.E 542 This is true when the constitutionality of an ordinance is attacked, and no law or ordinance will be declared unconstitutional unless clearly so and every reasonable intendment will be made to sustain it *Glenn v. Board of Education,* 210 N.C. 525, 187 S.E. 781; *Jewel Tea Company v. Troy,* 80 F. 2d 366.

It is well settled that, although the obligations of contract must yield to a proper exercise of the police power and vested rights cannot inhibit proper exertion of the power, it must be exercised for an end which is in fact public, and the means adopted must be reasonably adapted to the accomplishment of that end and must not be arbitrary and oppressive. *Triegle v. Acme Homestead Association,* 297 U.S. 189, 80 L. Ed. 575; *State v. Finney,* 65 Idaho 630, 150 P. 2d 130, 132; *S. v. Harris,* 216 N.C. 746, 6 S.E. 2d 854.

As was stated by *Barnhill, J.,* speaking for the Court in *Suddreth v. Charlotte, supra,* quoting 37 Am. Jur. 535, "No person has an absolute right to use the streets of a municipality in the operation of power-driven vehicles for hire. Such operation is a privilege which the municipality under proper legislative authority may grant or withhold." *Commonwealth v. Rice,* 158 N.E. 797, 55 A.L.R. 1128; *Bunn v. City of Atlanta,* 19 S.E. 2d 553; *S. v. Carter,* 205 N.C. 761, 172 S.E. 415; Blashfield Cyc.

Auto. L. & P. 67; 7 McQuillin, Municipal Corporations, Sec. 24.661, and cases cited thereunder.

"The fundamental rule that a municipal corporation cannot surrender in any part or in any respect the police power delegated to it by the State is applicable to the regulation of taxicabs. It follows that the grant of a franchise to a taxicab does not and cannot, despite any terms of the franchise, diminish in any respect in the least, the police power of the municipal corporation to regulate taxicabs or the particular company enjoying such franchise." 7 McQuillin, Municipal Corporations, Sec. 24.662; *Northern Pac. Ry. Co. v. Duluth,* 208 U.S. 583, 52 L. Ed. 630; *Carolina & N. W. Ry. Co. v. Town of Lincolnton,* 33 F. 2d 719.

The municipality now seeks by ordinance to restrict the operation of taxicabs to the holders of franchises. It is not logical to assume that a franchise holder is operating a taxicab when such vehicle is rented to an independent contractor. The lessor is engaged in the business of renting vehicles to be operated as taxicabs by others who, not being franchise holders, are not extended the privilege of operation, even though they are duly licensed and qualified drivers of taxicabs; "operation" being used here to denote the business engaged in and not the manual operation of a vehicle. The corporate plaintiffs are in effect "farming out" their franchises. The ordinance does not interfere with the right of a duly licensed and qualified driver to be employed as such. It simply requires the proper exercise of the franchise by those to whom the privilege has been extended.

By whatever designation given, be it franchise, certificate of public convenience and necessity, permit or license, the privilege of operating vehicles for hire on the streets of a municipality is not a common, fundamental or natural right, and must give way to reasonable regulation bottomed on a *bona fide* promotion of the public safety, security and welfare.

In this instance the power to create carries with it the power to control. The constitutionality of the legislative delegation to the municipality to grant and regulate motor vehicles franchises carries with it *ex vi terminis* the power to apply such measures and means of regulation as are reasonably necessary to the public interest to secure the result. *Suddreth v. City of Charlotte, supra; Rio Bus Lines Co. v. Southern Bus Line Co.,* 272 S.W. 18.

The municipality may name such terms and conditions as it sees fit to impose for the privilege of transacting such business, and the courts cannot hold such terms unreasonable, except for discrimination between persons in a like situation. The wisdom and expediency of the regulation rests alone with the lawmaking power. *Lawrence v. Nissen,* 173

N.C. 359, 91 S.E. 1036; *Turner v. New Bern,* 187 N.C. 541, 122 S.E. 469; *Suddreth v. Charlotte, supra.*

Applying these principles to the case in hand the Court is of the opinion, and so holds, that the judgment of the Superior Court should be affirmed. It is so ordered.

Affirmed.