EDWARD EARL WHALEY v. LENOIR COUNTY AND RICHARD WHALEY, BILLY BREWER, LUBBY EDWARDS, IKE WHITFIELD, AND MILTON WILLIAMS, CHAIRMAN AND MEMBERS OF THE BOARD OF COUNTY COMMISSIONERS OF LENOIR COUNTY

No. 698SC272

(Filed 23 July 1969)

1. **Constitutional Law § 12—   police power — regulation of occupations — limitations on power**

   The State cannot, under the guise of protecting the public, arbitrarily

interfere with private business or prohibit lawful occupations or impose unnecessary or unreasonable restrictions on them.

**2. Constitutional Law § 12— police power — regulation of ambulance service**

The regulation of ambulance service is a valid and legitimate exercise of the police power. G.S. 153-9(58).

**3. Counties § 1— authority to regulate ambulance service**

Authority of a county to regulate ambulance service — whether it be by franchise, permit, certificate of public convenience or necessity, license or whatever name is given — can only come from and cannot exceed that given by the enabling Act, G.S. 153-9(58).

**4. Constitutional Law §§ 12, 20; Counties § 1— regulation of ambulance service — grandfather clause — equal protection**

In statute authorizing the several counties to enact an ordinance making it unlawful for anyone to provide ambulance service without first obtaining a franchise from the county, grandfather clause providing that county commissioners shall grant a franchise, without a finding of public convenience and necessity, to any ambulance operator who was furnishing ambulance service on 9 May 1967 — the effective date of the statute — and who continues to provide such service up to and including the effective date of the ordinance, *is held* unconstitutional in not affording equal protection to all ambulance operators who are lawfully doing business on the effective date of the ordinance, since there must be a finding of public convenience and necessity as to those operators who lawfully and in good faith began ambulance services after 9 May 1967 but before the effective date of the ordinance. G.S. 153-9(58)(a)(2); N. C. Constitution Art. I, §§ 1, 7, 17, 31.

**5. Carriers § 2; Statutes § 8— purpose of a "grandfather clause"**

The purpose of a grandfather clause is to protect and preserve *bona fide* rights existing at the time of the passage of the legislation which contains such clause.

**6. Constitutional Law § 19; Counties § 1— regulation of ambulance service — insurance — monopolies and exclusive emoluments**

In statute authorizing the several counties to enact an ordinance regulating the operation of ambulance service, section of the statute granting to the counties the power to "set minimum limits of liability insurance coverage for ambulances," *is held* not void as being in contravention of constitutional prohibitions against monopolies and exclusive emoluments, since the section does not provide that liability insurance shall be the exclusive method of indemnifying persons or property against loss due to negligent operation of the ambulance service. G.S. 153-9(58)(a)(6); N. C. Constitution, Art. I, §§ 7, 31.

**7. Constitutional Law § 19; Counties § 1— ordinance regulating ambulance service — insurance — monopolies and exclusive emoluments**

County ordinance requiring all certified operators of ambulance services within the county to submit evidence of public liability and property damage insurance in stated amounts with an insurance company licensed to conduct business in this State, *is held* void as being in con-

travention of N. C. Constitution, Art. I, § 7, prohibiting separate or exclusive emoluments, and Art. I, § 31, prohibiting perpetuities and monopolies, since the ordinance excludes other methods of indemnifying persons or property against loss.

APPEAL by plaintiff from *Mintz, J.,* 25 February 1969 Session of Superior Court of LENOIR.

The Board of County Commissioners of Lenoir County, pursuant to the provisions of G.S. 153-9(58), and after notice and public hearing, enacted, on 9 December 1968, "An Ordinance to Franchise, Control and Regulate Ambulance Service in Lenoir County." The effective date of the ordinance was 8 January 1969. Both the enabling Act, G.S. 153-9(58), and the ordinance contained a "grandfather clause". Plaintiff began operating an ambulance service on 25 November 1968. On 6 January 1969, plaintiff filed an application for a franchise to continue operating his ambulance service in Lenoir County. In addition to plaintiff, one other firm, Manhattan Ambulance Service, filed an application for a franchise to operate an ambulance service, and three firms filed applications under the grandfather clause of the statute and ordinance. Plaintiff does not contend that he is entitled to a franchise pursuant to the grandfather clause contained in the statute and the ordinance. On 6 January 1969 the applications of the three firms under the grandfather clause were approved by the Board of Commissioners. The applications of plaintiff and Manhattan Ambulance Service were heard at public hearing on 7 January 1969 and denied.

Plaintiff then instituted this action to obtain an injunction to restrain and enjoin defendants from enforcing the ordinance against plaintiff, from interfering with the operation of his ambulance service, and from prosecuting him on account of said ordinance.

When the matter came on for hearing, plaintiff waived all contentions other than his contention that the statute and ordinance are unconstitutional. The court made findings of fact, entered conclusions of law, and thereupon adjudged the ordinance to be valid. Plaintiff appealed.

*Turner and Harrison by J. Harvey Turner for plaintiff appellant.*

*Thomas B. Griffin for defendant appellees.*

MORRIS, J.

Only one question arises on this appeal: Is the ordinance adopted by the Board of Commissioners of Lenoir County entitled "An Ordi-

nance to Franchise, Control and Regulate Ambulance Service in Lenoir County" unconstitutional in whole or in part?

Plaintiff contends that the franchising, licensing, and control of ambulance services is not a proper and legitimate exercise of the police power, but that if within the police power of the State, the retroactive provision of § (a)(2) thereof is unconstitutional as is the provision of § (a)(6) thereof.

The pertinent provisions of G.S. 153-9(58) are:

"a. Upon finding as fact, after notice and public hearing, that exercise of the powers enumerated below is necessary to assure the provision of adequate and continuing ambulance services and that exercise of the powers enumerated below are necessary to preserve, protect and promote the public health, safety and general welfare, boards of county commissioners within their respective counties are hereby granted powers to:

1. Enact an ordinance making it unlawful to provide ambulance services or to operate ambulances without having been granted a franchise to do so;

2. Grant franchises to ambulance operators, based within or without the county; provided, that any ambulance operator providing ambulance services in any county upon May 9, 1967, and who continues to provide such services up to and including the effective date of any ordinance adopted pursuant to this subdivision, and who submits to the board of commissioners of any such county evidence satisfactory to the board of such continuing service, shall be entitled to a franchise to serve at least that part of said county in which such service has been continuously provided, and the board of commissioners of any such county shall, upon finding that all other requirements of this act are met, grant such franchise; . . .

· · ·

6. Set minimum limits of liability insurance coverage for ambulances."

The effective date of the Act was 9 May 1967. 1967 Session Laws of North Carolina, c. 343, p. 373.

The pertinent portions of the ordinance are:

"Sec. 6. Existing ambulances.

Every owner operating an ambulance or ambulances in Lenoir County on the 9th day of May 1967, and who has continued to provide such services up to and including the effective

date of this ordinance, shall be deemed, in the absence of evidence and finding by the Board to the contrary, to be operating under public convenience and necessity and, provided, that all other requirements of this ordinance have been met, the Board shall grant a certificate to such owner or owners upon written request therefor."

"Sec. 9.  Rules governing general operation.

The following rules shall govern the general operation of ambulances under a certificate of public convenience and necessity:

.    .    .

(C)  INSURANCE  REQUIRED.  Every  owner  operating ambulances under a certificate shall submit to the Board evidence of public liability and property damage insurance in force with an insurance company licensed to conduct business in this state in the following amounts:

Bodily Injury —          $100,000 per person
Bodily Injury —          $300,000 per accident
Property Damage —        $100,000 per accident."

Plaintiff and defendants stipulated: (1) That on or shortly before 22 November 1968, plaintiff, through a third party, inquired of one of the defendants whether the Board of County Commissioners was considering the adoption of an ordinance to control and franchise ambulance services in Lenoir County, and the answer was, "No, but that it had been discussed." (2) That on 23 November 1968 a policy of insurance was issued by a company licensed to do business in North Carolina covering the ambulance of plaintiff with limits of liability as follows: Bodily injury — $10,000 per person; bodily injury — $20,000 per accident; property damage — $5,000 per accident with an uninsured motorist clause providing $10,000 for bodily injury per person and $20,000 per accident. (3) That the ambulance of plaintiff was contracted for on 1 November 1968 and equipment and appurtenances required by the North Carolina State Board of Health were purchased and installed. Certificate transferring title to the ambulance was executed 21 November 1968. (4) That between 1 November and 24 November 1968 plaintiff and three of his employees received instructions in and completed first aid courses required by the State Board of Health for ambulance attendants and were so certified. (5) That on 25 November 1968 the State Board of Health approved said ambulance, its equipment and location, and the ambulance attendants and drivers. (6) That

on 25 November 1968 plaintiff began operating his business and continued to so operate to the effective date of the ordinance.

Plaintiff concedes that if the franchising or licensing of ambulance service is within the police power of the State, then generally speaking G.S. 153-9(58) and the ordinance before us are constitutional, although specific sections of each may not be. But he contends that the statute and the ordinance cannot be sustained as a legitimate exercise of the police power because they have no substantial relation to the public health, morals, order or safety, or general welfare. He relies on *State v. Harris*, 216 N.C. 746, 6 S.E. 2d 854, and *Roller v. Allen*, 245 N.C. 516, 96 S.E. 2d 851. In the *Harris* case, the Court held that the statute providing for the licensing of cleaners and pressers was unconstitutional, and in the *Roller* case, the Court held that a statute requiring a license for persons or firms undertaking to lay, set or install ceramic tile, marble or terrazzo floors or walls was unconstitutional as an unwarranted interference with the fundamental right to engage in an ordinary and innocuous occupation in contravention of Article I, §§ 1, 7, 17 and 31 of the Constitution of North Carolina. In both cases the Court held that the statute before the Court could not be upheld as an exercise of the police power, because their provisions had no substantial relation to the public health, safety or welfare but tended to create monopolies. The *Roller* case was decided in 1957, and Justice Higgins therein noted that the "regimentation and control over trades and industry by law reached its high water-mark about 1937" and quoted the *Harris* case wherein the Court expressed its concern over the tendency.

[1]    The State cannot, under the guise of protecting the public, arbitrarily interfere with private business or prohibit lawful occupations or impose unnecessary or unreasonable restrictions on them, *State v. Ballance*, 229 N.C. 764, 51 S.E. 2d 731, and the Court has held unconstitutional statutes providing for the licensing of real estate brokers only in certain designated areas of the State, *State v. Dixon*, 215 N.C. 161, 1 S.E. 2d 521; for the licensing of cleaners and pressers, *State v. Harris, supra;* photographers, *State v. Ballance, supra;* and ceramic tile contractors, *Roller* and *Allen, supra.*

The Court has recognized the following as professions and occupations so affected with the public interest as to warrant their regulation for the public good: licensing of physicians and surgeons, *State v. Call*, 121 N.C. 643, 28 S.E. 517; pilots, *St. George v. Hanson*, 239 N.C. 259, 78 S.E. 2d 885; attorneys, *Baker v. Varser*, 240 N.C. 260, 82 S.E. 2d 90; barbers, *Motley v. State Board of Barber Exam-*

*iners,* 228 N.C. 337, 45 S.E. 2d 550; plumbing and heating contractors, *Roach v. Durham,* 204 N.C. 587, 169 S.E. 149; dentists, *Allen v. Carr,* 210 N.C. 513, 187 S.E. 809; real estate brokers, *State v. Warren,* 252 N.C. 690, 114 S.E. 2d 660; pharmacists, *North Carolina Board of Pharmacy v. Lane,* 248 N.C. 134, 102 S.E. 2d 832; and taxicab operators, *Suddreth v. Charlotte,* 223 N.C. 630, 27 S.E. 2d 650.

[2]   We believe the regulation of ambulance service is a valid and legitimate exercise of the police power. As was said by Barnhill, J. (later C.J.), speaking for the Court in *Suddreth v. Charlotte, supra,* and quoting 37 Am. Jur. 535: "No person has an absolute right to use the streets of a municipality in the operation of power-driven vehicles for hire. Such operation is a privilege which the municipality, under proper legislative authority, may grant or withhold."

> "The business of carrying passengers for hire is a privilege, the licensing, regulation, and control of which is peculiarly and exclusively a legislative prerogative. So is the power to regulate the use of public roads and streets. The General Assembly in the exercise of this police power may provide for the licensing of taxicabs and regulate their use on public streets, or it may, in its discretion, delegate this authority to the several municipalities. 37 Am. Jur., 534, Sec. 21; Anno. 144 A.L.R. 1120." *Suddreth v. Charlotte, supra.*

In this instance the General Assembly has delegated this authority to the several counties.

We now turn to the specific portions of the ordinance and enabling statute which plaintiff contends are unconstitutional.

[3]   Of course the authority of the county to regulate ambulance service — whether it be by franchise, permit, certificate of public convenience or necessity, license or whatever name is given — can only come from and cannot exceed that given by the enabling Act. *Smith v. City of Winston-Salem,* 247 N.C. 349, 100 S.E. 2d 835.

[4]   The enabling Act [G.S. 153-9(58)] contains a grandfather clause in that it provides in section (a)(2) thereof that any ambulance operator providing ambulance services in any county on 9 May 1967, and who continues to provide such service up to and including the effective date of any ordinance adopted pursuant to the statute shall be entitled to a franchise to serve at least that part of the county in which such service had been continuously provided. If satisfactory evidence of such continuous service is submitted and

other requirements of the Act are met, the county commissioners shall grant such franchise.

The ordinance provides that all owners operating an ambulance service in Lenoir County on 9 May 1967 who have continuously provided such service to the effective date of the ordinance "shall be deemed, in the absence of evidence and finding by the Board to the contrary, to be operating under public convenience and necessity" and if all other requirements of the ordinance are met, the Board shall grant a certificate to such owner upon written request therefor.

[4, 5]    Grandfather clauses have been upheld in this State in previous instances. *State v. Call, supra,* (license to practice medicine); *Utilities Commission v. Fleming,* 235 N.C. 660, 71 S.E. 2d 41 (grandfather clause under the Bus Act of 1949). As was said in *Utilities Commission v. Fleming, supra:* "The purpose of a grandfather clause is to protect and preserve *bona fide* rights *existing at the time of the passage of the legislation which contains such clause.* Other provisions in such Act intended to apply to applicants seeking rights thereunder, separate and apart from any grandfather rights confirmed therein, will not be permitted to impinge upon or defeat such rights as are intended to be protected by the grandfather clause." (Emphasis supplied.) Here, however, the rights existing at the time of the passage of the ordinance may *not* be protected. Certainly, the rights of those people in every county who were in the business of furnishing ambulance service on 9 May 1967 and who continue to furnish such service to the effective date of the ordinance are protected. There is nothing, however, to protect the rights of those who, in good faith, enter the business in any county after 9 May 1967 but *before* the enactment or effective date of an ordinance. Thus the rights of *all* who are in the business at the effective date of the ordinance are not protected. As is the case here, plaintiff entered the business on 25 November 1968, after much good faith, preparation and investment of capital, well before the effective date of the ordinance on 9 January 1969, and at a time when it was perfectly legal for him to do so without first obtaining permission from anybody, except approval of the State Board of Health. Yet, although he was conducting the business on the *effective date of the ordinance,* there had to be a finding of public convenience and necessity as to him which was not required of those in a similar business who had been operating on 9 May 1967, and were still operating on the effective date of the ordinance.

We find no other enabling Act in this or any other jurisdiction which authorizes municipalities or counties prospectively to enact

regulatory ordinances using the effective date of the enabling Act as the cutoff date rather than the effective date of the ordinance to be enacted, if at all, at sometime in the future.

Because of the possible retroactive application of the grandfather rights provided for in the enabling Act, we are led to the ineluctable conclusion that § (a) (2) of G.S. 153-9(58) and § 6 of the ordinance invade the personal and property rights guaranteed and protected by Article I, §§ 1, 7, 17 and 31 of the Constitution of North Carolina.

[6, 7]     Plaintiff also contends that § (a) (6) of G.S. 153-9(58) and § 9(C) of the ordinance must fall as violative of Article I, § 7 of the Constitution of North Carolina prohibiting separate and exclusive emoluments and § 31 prohibiting perpetuities and monopolies. He relies on *State v. Sasseen,* 206 N.C. 644, 175 S.E. 142. There, the City of Charlotte had enacted an ordinance prohibiting the operation of taxicabs, U-Drive-It, or for-hire cars or automobiles unless there shall have first been filed with the Treasurer of the City of Charlotte a policy or policies of liability insurance in stated minimum amounts covering personal injury and property damage issued by some reliable and responsible company authorized to do business in North Carolina or in lieu thereof the deposit of like amounts in cash or securities to indemnify persons who might be injured or whose property might be damaged by the negligent operation of the vehicles named in the ordinance. The Supreme Court noted that the policy of the ordinance with reference to protecting persons injured or property damaged through negligence was not under discussion but the legality of the ordinance as adopted was. In holding that that section of the ordinance violated Article I, §§ 7 and 31 of the Constitution of North Carolina, the Court said: "The act, as written, has a tendency to create a monopoly and turn the business over to a privileged class without allowing personal surety or sureties, which was, until recent years, the kind of bond usually required and given."

The following year, in *Watkins v. Iseley,* 209 N.C. 256, 183 S.E. 365, the Court approved a section of the Raleigh ordinance dealing with the same subject matter requiring every person, firm or corporation, as a condition precedent to operating taxicabs or motor vehicles for hire in the City of Raleigh, on or after 1 September 1935, to secure liability insurance, or enter into bond with personal or corporate surety in stated minimum amounts for personal injury and property damage. In so doing, the Court quoted Mr. Justice

Sutherland, delivering the opinion of the Supreme Court of the United States in *Packard v. Banton,* 264 U.S. 140, 68 L. Ed. 596:

"The contention most pressed is that the act unreasonably and arbitrarily discriminates against those engaged in operating motor vehicles for hire in favor of persons operating such vehicles for their private ends, and in favor of street cars and motor omnibuses. If the State determines that the use of streets for private purposes in the usual and ordinary manner shall be preferred over their use by common carriers for hire there is nothing in the Fourteenth Amendment to prevent. The streets belong to the public and are primarily for the use of the public in the ordinary way. Their use for the purposes of gain is special and extraordinary and, generally at least, may be prohibited or conditioned as the legislature deems proper. . . . Decisions sustaining the validity of legislation like that here involved are numerous and substantially uniform. (Citing authorities.) . . . The fact that, because of circumstances peculiar to him, appellant may be unable to comply with the requirement as to security without assuming a burden greater than that generally borne or excessive in itself, does not militate against the constitutionality of the statute. Moreover, a distinction must be observed between the regulation of an activity which may be engaged in as a matter of right and one carried on by government sufferance or permission. In the latter case the power to exclude altogether generally includes the lesser power to condition, and may justify a degree of regulation not admissible in the former. See *Davis v. Massachusetts,* 167 U.S., 43."

[6] The section of the enabling Act to which objection is raised merely grants to the counties the power to "set minimum limits of liability insurance coverage for ambulances" but does not provide that this shall be the exclusive method of indemnifying persons or property against loss by injury of damage due to negligent operation nor does it require that insurance shall be obtained. We find this unobjectionable.

[7] The section of the ordinance under attack is § 9(C) thereof which reads as follows:

"INSURANCE REQUIRED. Every owner operating ambulances under a certificate shall submit to the Board evidence of public liability and property damage insurance in force with an insurance company licensed to conduct business in this state in the following amounts:

| Bodily Injury — | $100,000 per person |
| Bodily Injury — | $300,000 per accident |
| Property Damage — | $100,000 per accident." |

In *Cab Co. v. Shaw,* 232 N.C. 138, 143, 59 S.E. 2d 573, Seawell, J., speaking for the Court, said:

"By whatever designation given, be it franchise, certificate of public convenience and necessity, permit or license, the privilege of operating vehicles for hire on the streets of a municipality is not a common, fundamental or natural right, and must give way to reasonable regulation bottomed on a *bona fide* promotion of the public safety, security and welfare.

In this instance the power to create carries with it the power to control. The constitutionality of the legislative delegation to the municipality to grant and regulate motor vehicles franchises carries with it *ex vi terminis* the power to apply such measures and means of regulation as are reasonably necessary to the public interest to secure the result. *Suddreth v. City of Charlotte, supra; Rio Bus Lines Co. v. Southern Bus Line Co.,* 272 S.W. 18.

The municipality may name such terms and conditions as it sees fit to impose for the privilege of transacting such business, and the courts cannot hold such terms unreasonable, except for discrimination between persons in a like situation. The wisdom and expediency of the regulation rests alone with the lawmaking power. *Lawrence v. Nissen,* 173 N.C. 359, 91 S.E. 1036; *Turner v. New Bern,* 187 N.C. 541, 122 S.E. 469; *Suddreth v. Charlotte, supra.*"

We do not question the policy of requiring protection for persons injured or property damaged by the negligent operation of an ambulance, but for the same reasons set out in *State v. Sasseen, supra,* we hold that this section of the ordinance contravenes Article I, §§ 7 and 31 of the Constitution of North Carolina.

For the reasons stated herein, the cause must be remanded to the Superior Court of Lenoir County for the entry of judgment in accordance with this opinion.

Error and remanded.

CAMPBELL and BRITT, JJ., concur.