## STATE v. J. H. GULLEDGE.

(Filed 1 May, 1935.)

**Municipal Corporations B a: H d—Municipality held without authority to require operators of vehicles for hire to furnish personal injury and property damage insurance or bonds with solvent surety.**

The municipality in question was authorized by its charter "to regulate the use of automobiles . . . or other motor vehicles," and was authorized by general law "to license and regulate all vehicles operated for hire," and "to make . . . regulations for the better government." Ch. 342, Private Laws of 1907, C. S., 2787 (36), 2673. The municipality passed an ordinance requiring all operators of motor vehicles for hire to file with the city a policy or policies of insurance or a bond with solvent surety in specified amounts for each vehicle so operated indemnifying the public for loss of life, personal injuries, and damage to property caused by the negligent operation of such vehicles. *Held:* The ordinance is invalid as being beyond the authority of the municipality to enact, since

the express authority to regulate extends to the physical operation of vehicles rather than to the imposition of conditions precedent to their operation hitherto unknown in the general legislation of the State, nor is authority to enact such ordinance necessarily or fairly implied from the express authority conferred upon the city in regard to the operation of such vehicles, nor essential to the declared objects and purposes of the corporation.

STACY, C. J., and CONNOR, J., dissent.

THIS is a criminal action, tried before *Clement, J.,* at the February Term, 1935, of MECKLENBURG, wherein the State appealed from a judgment of not guilty entered upon a special verdict.

It was admitted by the defendant and found by the jury that on 27 June, 1934, the city of Charlotte adopted the following ordinance:

"Be it ordained by the Council of the City of Charlotte.

"SECTION ONE: That the owner of every motor bus, jitney bus, or taxicab now operated over the public streets in the city of Charlotte, except such as are operating under the exclusive control of the Corporation Commission of North Carolina, shall file within fourteen (14) days after the passage of this ordinance a policy or policies of liability insurance or bonds with some solvent surety, justified according to the laws of North Carolina, in the sum of not less than five thousand ($5,000.00) dollars, indemnifying against liability for damage wrongfully done by any motor vehicle for hire used by said owner in such business for the death or injuries to any one person as the result of negligence of the said owner of said motor vehicle for hire, or any servant, agent, or employee of said owner; and in the sum of not less than ten thousand ($10,000) dollars, indemnifying against liability for damage wrongfully done by any motor vehicle for hire used by said owner in such business for the death or injuries to more than one person as the result of negligence of the said owner of said motor vehicle for hire or any servant, agent, or employee of said owner, in the same accident; and in the sum of one thousand ($1,000) dollars for any damage to property in any one accident, sustained as the result of the negligence of the owner of said motor vehicle for hire, or any servant, agent, or employee of said owner.

"SECTION TWO: There shall be filed such insurance policy or bonds covering each and every one of the said motor vehicles for hire operated and a blanket policy covering more than one motor vehicle for hire will not be allowed.

"SECTION THREE: The failure to file said bond within the time prescribed, to wit: Fourteen (14) days after the passage of this ordinance, will be ground for the cancellation of any license issued to operate said motor vehicle for hire in the city of Charlotte.

"SECTION FOUR: This act shall not and does not repeal any ordinance now in force and effect, and shall be in addition thereto.

"SECTION FIVE: Any person, firm, or corporation failing to comply with this ordinance and to furnish the insurance and bond herein provided shall be subject to a penalty of twenty-five dollars ($25.00) per day for each and every day said ordinance is violated, in addition to the cancellation of said license.

"SECTION SIX: This ordinance, being for the immediate preservation of the public peace and safety of the citizens of the city of Charlotte, is hereby declared an emergency ordinance, to take effect after 11 July, 1934, as provided by law.

"SECTION SEVEN: That all ordinances or parts of ordinances in conflict herewith are hereby repealed."

It was further admitted by the defendant, and found by the jury, that on 26 August, 1934, the aforementioned ordinance was in effect (if valid), and on said date the defendant operated a taxicab for hire on the streets of Charlotte in violation of the terms of said ordinance, in that he failed to file with the city a policy of liability insurance or bond with solvent surety justified according to the laws of North Carolina.

It was admitted by the State, and found by the jury, that the defendant operated his said taxicab under a license duly issued by the Commissioner of Revenue pursuant to C. S. (Michie), 2613 (15) to 2621 (149), inclusive, known as the Motor Vehicle Act, and that the defendant has met all of the requirements of the city of Charlotte to entitle him to operate a taxicab for hire upon its streets other than complying with the aforementioned ordinance requiring liability insurance or bond.

It is further conceded and found: That the city of Charlotte is a duly organized and existing municipal corporation, and is possessed of the usual powers and authority granted municipal corporations by the laws of the State of North Carolina, and that its charter (chapter 342, Private Laws of 1907), among other things, provides:

"SECTION 47: That the board of aldermen shall have power to make and provide for the execution thereof such ordinances for the government of the city as it may deem proper, not inconsistent herewith or with the laws of the land.

"SECTION 48: That the board of aldermen shall have control of all the finances and other property, real and personal, belonging to the city, and, among the powers hereby granted, shall have the power and authority, by ordinances duly enacted; . . . (9) to regulate the use of automobiles, motor cars, motorcycles, or other motor vehicles, to issue permits for the use of such vehicles, and require the same to be numbered."

*Attorney-General Seawell, Bridges & Orr, and John M. Robinson for the State, appellant.*

*J. L. Delaney for the defendant, appellee.*

SCHENCK, J.   The sole question involved on this appeal is whether the
city of Charlotte had the authority to require the defendant by ordi-
nance to file with it a liability insurance policy or justified solvent bond
indemnifying the public against loss due to personal injuries or death,
or to damage to property, caused by the wrongful and negligent opera-
tion of a taxicab for hire upon the streets of said city.

The only powers granted by the Legislature upon which the city of
Charlotte can rely for the authority to adopt the ordinance herein in-
volved are contained in its charter and the general law, as follows:

"Charter, chapter 342, Private Laws 1907: Automobiles and Vehi-
cles—To regulate the use of automobiles, motor cars, motorcycles, or
any other motor vehicle, to issue permits for the use of such vehicles,
to require the same to be numbered.

"General Law, C. S., 2787: Corporate Powers—In addition and co-
ordinate with the power granted to cities in sub-chapter 1 of this chap-
ter, and any acts affecting such cities, all cities shall have the following
powers:

"32. To require the examination of all drivers of motor vehicles upon
the streets and highways of the city, to prescribe fees for such examina-
tions, and to prevent the use of such vehicles by all persons who shall
not satisfactorily pass such examination.

"36. To license and regulate all vehicles operated for hire in the city.

"General Law, C. S., 2673: General power to make ordinances:
The board of commissioners shall have power to make ordinances, rules,
and regulations for the better government of the town, not inconsistent
with this chapter and the law of the land, as they may deem necessary."

If the authority to require the filing with it by operators of taxicabs
of the insurance or bond mentioned in the ordinance exists in the city,
it must be found in one or more of these provisions: "To *regulate* the
use of automobiles . . . or other motor vehicles, . . ." City
charter, *supra;* "to license and *regulate* all vehicles operated for hire in
the city," C. S., 2787, *supra;* "power to make ordinances, . . . and
*regulations* for the better government of the town, . . ." C. S.,
2673.

"It is a general and undisputed proposition of law that a municipal
corporation possesses, and can exercise, the following powers, and no
others:  First, those granted in express words; second, those necessarily
or fairly implied; third, those essential to the declared objects and pur-
poses of the corporation—not simply convenient, but indispensable.
Any fair, reasonable doubt concerning the existence of power is resolved
by the courts against the corporation, and the power is denied."   1 Dil-
lon Mun. Corp., sec. 89; *S. v. Webber,* 107 N. C., 962; *S. v. Darnell,*
166 N. C., 300.

"An ordinance cannot legally be made which contravenes a common right, unless the power to do so be plainly conferred by a valid and competent legislative grant; . . ." Dillon Mun. Corp., sec. 325. *S. v. Thomas,* 118 N. C., 1221.

We do not think that the authority "to regulate the use of automobiles . . . or other motor vehicles" conferred by the charter, or the authority "to license and regulate all vehicles operated for hire," or the "power to make . . . regulations for the better government" conferred by the general law, can justly be construed as intended by the Legislature to authorize the adoption of an ordinance of the kind here involved, which establishes a public policy hitherto unknown in the general legislation of the State. If the city was authorized to require liability insurance or surety bond of a taxicab operator, by virtue of the authority of the charter "to regulate . . . motor vehicles," it would seem that it was authorized to make similar requirements of any one who operates any other motor vehicle; and if the general welfare provision "to make . . . regulations for the better government" authorized the requirement of indemnity from those engaged in the operation of taxicabs, it would seem that such provision would authorize the city to require similar liability insurance or bond from, for instance, merchants against damage from foods containing deleterious substances, or from physicians against damage from malpractice, or from any one engaged in any business or profession against any damage to the public resulting from any tortious act. To place such a construction upon these provisions would be to give to the words "regulate" and "regulations" a far more extended and unrestricted scope than we apprehend the Legislature ever had in contemplation.

To "regulate," according to Webster's New International Dictionary (1935), means "to govern or direct according to rule, . . . to bring under control of law or constituted authority," and we think that the word was used in the city charter and the general Municipal Corporation Act to confer upon the city the authority to make traffic rules, designate parking places, control the manner of solicitation of passengers, and generally to govern and direct the physical operation of vehicles operated for hire, rather than to confer authority to prescribe conditions precedent to the operation of such vehicles, when such authority transcends the policy of the general law, and is not expressly granted. See *State ex rel. Johnson v. Bates, City Register* (Tenn.), 30 S. W. (2d), 248.

The power to regulate, or make regulations, certainly does not grant to the city in express words the authority to adopt an ordinance requiring the filing with it of liability insurance or justified solvent bond indemnifying the public against damage wrongfully and negligently

inflicted; and we do not think such authority can be necessarily or fairly implied from such power, or that such authority is essential to the declared objects and purposes of the corporation. Therefore, we hold that. the Superior Court was correct in entering a judgment of not guilty upon the special verdict found.

This case is not governed by *Flemming v. Asheville,* 205 N. C., 765, relied upon by the appellant. In that case the question as to whether the Legislature, by charter or general law, had conferred on the city the authority to adopt such an ordinance was not raised. When it was written that "It would seem that the latter ordinance was valid," the writer was addressing his words to the fact that the "latter ordinance" was relieved of the unconstitutional provision of a former ordinance requiring surety to be given in corporate insurance companies to the exclusion of individual sureties or personal bonds.

Since we are of the opinion that the city of Charlotte was without authority, under its charter or the general law, to adopt the ordinance under which the defendant was indicted, the question of whether such ordinance is in conflict with the general law and policy of the State as contained in chapter 116, Public Laws 1931, becomes a moot one, and any discussion thereof supererogatory.

Affirmed.

STACY, C. J., and CONNOR, J., dissent.