(No. 23167.

THE CITY OF GENESEO, Appellee, *vs.* THE ILLINOIS NORTH-ERN UTILITIES COMPANY, Appellant.

*Opinion filed February 14, 1936—Rehearing denied April 24, 1936.*

STONE, C. J., and FARTHING, J., dissenting.

ISHAM, LINCOLN & BEALE, WILSON & McILVAINE, DIXON, DEVINE, BRACKEN & DIXON, and HENRY WATERMAN, (DAVID F. TABER, of counsel,) for appellant.

ARTHUR G. HIGGS, City Attorney, and HARRY E. BROWN, for appellee.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The city of Geneseo filed a complaint against the defendant, Illinois Northern Utilities Company, for a mandatory injunction directing the defendant to remove from the streets of the city, the poles, wires and equipment of defendant used by it in furnishing electric service both within and without the corporate limits of the city.

The complaint alleges, in substance, that the plaintiff was incorporated in 1865 by special act of the legislature; that the title to all the streets and other public places of the city is vested in the plaintiff, subject only to the right of use thereof for travel by the public; that by ordinance passed by its city council and accepted by the defendant in 1923, the defendant was permitted for a term of ten years to occupy the streets in the city with its poles, wires and equipment; that such permission expired in 1933 and has not since been extended or renewed; that defendant has no right or authority to continue to occupy the streets with its said electric property; that plaintiff has constructed and is operating its own electric plant and by means thereof is furnishing electric service to inhabitants of the city; that by ordinance passed September 12, 1933, the plaintiff ordered the defendant to remove its poles, wires and equipment from the streets; that the defendant was seasonably served with a copy of the ordinance but refused to comply therewith and that on December 20, 1933, the plaintiff's city council passed an ordinance authorizing the filing of the present suit.

The answer of the defendant admits all the factual averments contained in the complaint but denies certain conclusions drawn therefrom. The legal issues made by the answer, in effect, are, that the defendant is a public utility operating under the Public Utilities statute and within the jurisdiction of the Commerce Commission; that the requirements of the Public Utilities act prohibit the defendant, without the consent of the Commerce Commission, from

ceasing to furnish electric service to the plaintiff and prohibit the city from moving defendant's transmission facilities from the streets unless authorized by the Commerce Commission; that the city is without legal authority to prohibit the use or occupation of the streets in the city by the defendant for its electric distribution system and is without power to maintain this suit.

The plaintiff made its motion to strike the answer. The motion was allowed. The case was referred to a special master. Evidence was taken by the plaintiff. None was offered by the defendant. The master found in accordance with the allegations of the complaint. The defendant's exceptions thereto were overruled by the court and a decree was entered granting the mandatory injunction as prayed. The trial court has certified that the validity of a municipal ordinance is involved and that the public interest requires that the appeal lie to this court.

The issue presented for decision is: Can the plaintiff maintain this action?

The plaintiff affirms that by reason of the provisions of its special charter it has such power. It particularly relies upon section 22 of article 12 thereof which is: "All property, real and personal, heretofore vested in the president and trustees of the town of Geneseo, for the use of the inhabitants of said town, or belonging to said town in any manner, shall be and the same is hereby declared to be vested in the corporation hereby created." We have carefully examined the other provisions of the special charter relied upon by the plaintiff and find no broader powers conferred upon the city relating to the title, regulation, control or use of the streets, alleys, avenues and public places (hereinafter called streets) than is conferred generally under the Cities and Villages act.

The police power is an attribute of the State. The State does not create the police power but such power is inherent in the State, and any law enacted by the General

Assembly properly embracing any power within the police power, is merely the exercise of a power that has always existed. Cities and kindred municipalities have no inherent powers. They are creatures of the statute and the General Assembly may breathe life into them and may take it away in accordance with its legislative will. It follows that any powers, rights, estates or functions that may be granted to such municipalities may be modified, restricted or entirely withdrawn at will by the sovereign, acting through its law-making body. The State may set up new administrative bodies and confer upon them some, or all, of the powers and rights which were formerly prerogatives of the city or municipality. (*Village of Atwood* v. *Cincinnati, Indianapolis and Western Railroad Co.* 316 Ill. 425.) In determining whether a given power has been conferred upon a municipality by statute the act is to be strictly construed. *Gerstley* v. *Globe Wernicke Co.* 340 Ill. 270; *Chicago Motor Coach Co.* v. *City of Chicago,* 337 id. 200.

The use of the term "vested," as employed in section 22 of the special charter, whereby all property theretofore vested in the president and trustees of the town of Geneseo was declared to be *vested* in the corporation (city of Geneseo) organized by the act, did not grant to the city, either irrevocably or in fee simple, the title to the streets within the corporate limits of the plaintiff but only committed the same to the city during the pleasure of the State. The title granted to the city was as a trustee for the whole people of the State without preference to any individuals or corporate bodies. (*Chicago Railways Co.* v. *City of Chicago,* 292 Ill. 190.) The title to such streets was held by the city, under the special charter, as a governmental agency of the State, subject to such title being withdrawn, modified or transferred by the State to another governmental agency then existing or subsequently created by legislative action. *Chicago Coach Co.* v. *City of Chicago, supra.*

It is conceded by the plaintiff that the poles, wires and equipment of the defendant originally were rightfully placed in the streets of the city. Since that time the city, in its business capacity, has engaged in the sale of electric energy to the public as a competitor of the defendant, and now, by the exercise of a supposed governmental function, it seeks to oust the equipment of its competitor from the streets of the plaintiff, the reason assigned being that the defendant's franchise, given it by the city, has expired. In that situation, is the defendant a trespasser by reason of maintaining its electrical equipment on such streets and has the plaintiff, by reason of its powers, reasonably and necessarily implied by the grant to it in its special charter, the right to eject the defendant's equipment from such streets?

The General Assembly created the Public Utilities Commission by an act in force July 1, 1914. (Laws of 1913, p. 459.) This act was later repealed but it was re-enacted in substantially the same form by "An act concerning public utilities" in force July 1, 1921, (Laws of 1921, p. 702,) and by the latter act the Illinois Commerce Commission (hereinafter called commission) was formed as the successor to the Utilities Commission set up by the prior act. (Ill. State Bar Stat. 1935, chap. 111a, pp. 2485-2515.) Utilities owned by municipalities are not within the scope of the act.

The defendant urges that by the provisions of the Utilities act of 1921, complete supervision of privately owned public utilities as distinguished from those owned by municipalities was vested in the commission; that that supervision carried with it supervisory control of equipment of any public utility carrying on its utility service where such equipment was located in the streets of any municipality. It would occupy too much space in this opinion, and would serve no useful purpose, to enumerate the different sections of the Utilities act applicable to the situation here.

The Utilities act is broad and comprehensive. It originated a new system in relation to public utilities and their

supervision, regulation and control, regulatory power over the issuance of securities, the type of service to be furnished, what new service might be undertaken in behalf of the public interest, with power in the commission to determine whether existing service might be abandoned or discontinued, to obviate and prevent new competition which would be of no advantage to the public, by requiring a public utility to procure a certificate of convenience and necessity before engaging in or undertaking a new enterprise, and where there was already existing a public utility, as well as competing public utilities, to safeguard both the public and the utilities by the fixing of fair, reasonable and non-discriminatory rates.

It is obvious that by this enactment it was the legislative intent to withdraw from local municipalities supervision of public utilities and to vest the same in the commission with the exclusive power of regulation and control of all means and instrumentalities used by the utility in the conduct of its business. *City of Chicago* v. *Commerce Com.* 356 Ill. 501; *City of Chicago* v. *Chicago Great Western Railroad Co.* 348 id. 193; *City of Altamont* v. *Baltimore and Ohio Railroad Co.* 348 id. 339; *County of St. Clair* v. *Pennsylvania Railroad Co.* 342 id. 646; *Chicago Motor Coach Co.* v. *City of Chicago, supra;* *Chicago North Shore and Milwaukee Railroad Co.* v. *City of Chicago,* 331 Ill. 360; *Commerce Com.* v. *Omphghent Township,* 326 id. 65; *City of Witt* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 324 id. 494; *Northern Trust Co.* v. *Chicago Railways Co.* 318 id. 402; *Village of Atwood* v. *Cincinnati, Indianapolis and Western Railroad Co. supra; Stephens* v. *Chicago, Burlington and Quincy Railroad Co.* 303 Ill. 49; Public Utilities act, secs. 8, 9, 10, 21, 27, 32, 36, 48, 49, 50, 55, 57, 59, 64, 69, 76 and 77.

That it was the legislative intent to vest such powers in the commission is further evidenced by article 6 of the act (Ill. State Bar Stat. 1935, p. 2510,) by which certain powers of regulation, fixing of rates and other regulatory

privileges are given to cities, provided that a majority of the citizens, voting at an election held for that purpose, shall vote in favor of the adoption of such powers. It is not averred that the plaintiff ever adopted article 6. If these powers were already in a city, no election would be necessary to vest it therewith or divest the commission thereof. It was expressly held in *Chicago Motor Coach Co. v. City of Chicago, supra,* that the provisions of the Utilities act withdrew from municipalities in this State the power which they had previously exercised in relation to the use of the streets, alleys and public places by public utilities and that these powers were conferred upon the commission.

The plaintiff stresses that portion of section 81 of the Utilities act providing that "nothing in this act shall be construed to limit or restrict powers now or hereafter granted to cities to pass ordinances for the protection of the public health, safety, comfort and general welfare or governing the regulation, control or occupation of streets, highways and public property within the city. Nothing in this act shall be construed to limit or restrict the powers granted to cities by this article, nor to extend the jurisdiction of the Illinois Commerce Commission over the matters covered by this article except as herein provided." This section has been heretofore construed by this court and it has been established that the above quoted provision of section 81 relates to the original installation or construction of the utilities upon the streets and not to the supervision, regulation and control of the operation of such facilities after installation. *Chicago North Shore and Milwaukee Railroad Co. v. City of Chicago, supra; Chicago Motor Coach Co. v. City of Chicago, supra.*

The plaintiff seeks to invoke the doctrine of estoppel against the defendant from the circumstances that by the acceptance of the ordinance, which granted the defendant the use of the plaintiff's streets for the installation of cer-

tain of its equipment for a period of ten years, a contract was made between plaintiff and defendant, that the contract was completely executed on the city's part, and that, the term fixed by the contract having expired, the defendant is estopped from denying the title of the plaintiff to the streets and its right to remove the defendant's property therefrom.

The power to determine whether the defendant shall continue or cease its utility business in the city rests with the commission. The situation presented is not that of landlord and tenant or a like relation. The title which the plaintiff originally had in the premises was merely at the sufferance of the true owner, the State. The State has, for public utility purposes, withdrawn that title from the plaintiff and placed it in the commission; neither party to the contract can impinge upon the powers of the commission and the doctrine of estoppel is not invokable nor applicable.

It is the law of this State that contracts of the character here made between the plaintiff and defendant are subject to modification and even annulment by the State in the exercise of its police power by the enactment of statutes promoting the general welfare of the People. *City of Chicago* v. *Commerce Com. supra; Public Utilities Com.* v. *City of Quincy*, 290 Ill. 360; *Chicago and Alton Railroad Co.* v. *Tranbarger*, 238 U. S. 67, 59 L. ed. 1204.

In so far as the contract here interferes with the commission in the exercise of the regulatory police powers granted it by the Utilities act, the contract was abrogated by the General Assembly in the enactment of the Public Utilities act of 1921. To permit the city to exercise control over the instrumentalities of a public utility occupying the city streets would be to give to the city in that respect concurrent jurisdiction with the commission of a public utility, a result not contemplated by the statute and one which cannot be drawn therefrom by a legitimate interpre-

tation thereof. The plaintiff was without the legal power and authority to maintain the proceeding.

The decree of the circuit court of Henry county is reversed and the cause is remanded with directions to overrule the motion to strike the defendant's answer.

*Reversed and remanded, with directions.*

Mr. CHIEF JUSTICE STONE, dissenting:

For the reasons given in *Chicago North Shore and Milwaukee Railroad Co.* v. *City of Chicago,* 331 Ill. 360, and in the dissenting opinion filed by me in *Chicago Motor Coach Co.* v. *City of Chicago,* 337 Ill. 200, I cannot concur in the view expressed in the majority opinion that section 81 of the Public Utilities act does not leave to cities the power to say whether the instrumentalities of a utility shall occupy the streets. That section is a part of the Public Utilities act, and I am unable to place any construction on it other than that given it in *Chicago North Shore and Milwaukee Railroad Co. supra, i. e.,* that it leaves in the city the power which it had before the enactment of the Public Utilities act, to regulate the location of and to consent to, or license, the construction of instrumentalities of a utility in the streets, though such power does not extend to the regulation of the utility itself. The power to consent necessarily implies the power to refuse to consent. The question is one of statutory construction. To construe that section to mean that the city may determine whether it will consent to, or license, such use of the streets but is powerless to deny continued use after the period of license has elapsed, because such denial would necessitate stopping the service, seems to me to render section 81 meaningless. Though it may be said to be wiser to vest the power to consent to or license the use of the streets by appellant in the Utilities Commission, such result should be accomplished by an amendment of the act. It is a legislative matter.

Mr. JUSTICE FARTHING, also dissenting.