HARVEY LEE SMITH AND WIFE, MARGARET H. SMITH v. CITY OF
WINSTON-SALEM
and
N. G. THOMAS AND WIFE, RUBY THOMAS v. CITY OF WINSTON-
SALEM.

(Filed 11 December, 1957)

1. **Municipal Corporations § 1—**

   A municipal corporation is an agency created by the State to assist in the civil government of a designated territory and the people embraced within its limits.

2. **Municipal Corporations § 5—**

   A municipal corporation has only those powers expressly granted in its charter or necessarily implied therefrom or essential to the declared objects and purposes of its creation, and it can have no extraterritorial powers unless expressly authorized by legislative grant.

3. **Same—**

   Provision in the charter of a municipality authorizing it to acquire property for necessary sewer lines outside its limits and to compel citizens living along such line to connect therewith, is a grant of power and is not self-executing, and therefore in the absence of allegation or proof that the city undertook to exercise such power in his case, a person residing outside the city limits may not contend that he was compelled to connect the sanitary facilities of his house to the municipal sewer line. G.S. 160-240.

4. **Municipal Corporations § 6—**

   A municipality in furnishing sanitary facilities to persons residing outside the corporate limits for a fee acts in a proprietary capacity.

5. **Contracts § 10—**

   Ordinarily, as a matter of public policy, corporations may not exempt themselves from liability for negligence in the performance of public services.

6. **Same: Municipal Corporations § 14b—**

Defendant municipality contracted to maintain and keep in repair sewer lines from territory outside its limits, which lines were connected with the municipal sewer system, but by ordinance in force at the time of the connections in question expressly exempted itself from liability for any damage or injury from maintenance and repair. *Held:* The exemption from liability was authorized by legislative act, G.S. 160-249, and a resident outside the city cannot recover for damages resulting from the failure of the municipality to perform its contractual obligation to repair and maintain such lines.

7. **Pleadings § 24a—**

Plaintiff must recover, if at all, upon the cause of action alleged in the complaint and cannot recover on a different legal right.

8. **Municipal Corporations § 14b—**

Where plaintiffs base their right of action upon the failure of defendant municipality to perform its contractual obligation to maintain and repair a sewer line to which the sanitary facilities of plaintiffs' residences were connected, plaintiffs may not recover damages resulting from the flowing of sewerage directly from the city's mains on plaintiffs' property on the ground of trespass, since plaintiffs may not recover in tort unrelated to the contractual obligations alleged.

APPEAL by defendant from *Crissman, J.,* January 21, 1957 Term of FORSYTH.

Plaintiffs Smith owned a house on Cornell Avenue, and plaintiffs Thomas a house on Yale Boulevard in a suburban development adjacent to Winston-Salem. Except for the allegations with respect to the location of their homes, the facts alleged in each complaint as the basis for recovery are substantially the same. The cases were consolidated for trial.

As determinative of the rights of the parties, the court submitted two issues in each case. The jury, by its answer to the first issue, found that plaintiffs' property had been damaged by a nuisance created by the negligence of defendant; and by their answer to the second issue, fixed the damage resulting therefrom. Judgments were entered on the verdicts. Defendants appealed.

*Hoyle C. Ripple and Wesley Bailey for plaintiff appellees.*
*Womble, Carlyle, Sandridge & Rice for defendant appellant.*

RODMAN, J. These in brief are the allegations of the complaints: In 1947 Weston Corporation, then the owner of land adjacent to Winston-Salem, began the development of the area for residential purposes. As a part of its planned development, the corporation laid out and installed a sewerage system to which the houses to be erected could be connected. This sewerage system was connected at defendant's corporate limits with

the city's system and terminated in a pump house of defendant some distance beyond its corporate boundaries. The sewage was there pumped and transferred to defendant's disposal plant. The city, as a condition to the connection with its sewerage system, required Weston to construct its system in accordance with plans and specifications provided by defendant. The system was so constructed. It was also made a condition to the connection that if the corporate limits of the defendant should be enlarged, the portion of the system included within the enlarged corporate limits should become the property of the city. In 1949 the city limits were enlarged and a portion of the development not including the residences of plaintiffs was taken in the city. Thereupon, the part of the system constructed by Weston and included within the corporate limits became the property of defendant. To service this portion of the system constructed by Weston and maintained for the benefit of the residents of defendant city, it was necessary to use the remainder of the system constructed by Weston and particularly the mains passing the homes of plaintiffs. In the summer of 1950 Weston sold and conveyed to defendant all of its water and sewer lines and easements for the maintenance thereof lying beyond the city limits. The consideration for this conveyance was the agreement of the city to operate, repair, and maintain the system. Subsequent thereto the city sold numerous rights to tap into this sewerage system. Plaintiffs, subsequent to the summer of 1950, purchased homes in the area developed by Weston Corporation. These homes were erected by Weston Corporation prior to 1949 and each, when constructed, was provided with bath and toilet facilities which were connected with the sewerage system constructed by Weston Corporation. The connections were in accordance with specifications of the city and were approved by it. Beginning in 1950 or 1951 defendant failed to adequately maintain the sewerage system which Weston Corporation had constructed for the benefit of the home owners in its development. The main sewerage line in the streets serving as outlets for plaintiffs' sewerage system separated and sagged because of broken joints and other defects in the city's mains. The mains were negligently permitted to fill up and sewage from the mains was forced back into the line connecting plaintiffs' homes with the street mains. The back pressure on the service connection was so great that the commode and bath tub in plaintiffs' homes repeatedly overflowed. Under the provisions of the city's charter, plaintiffs were required to connect their homes to the system so maintained and operated by the city, and the services so furnished were in conformity with the conditions and rates provided in the city ordinances.

Defendant admitted the construction of the sewer system by Weston Corporation under plans prepared or approved by it; the connection of the two systems, the inclusion of a portion of the Weston system in the corporate limits, a conveyance of the system by Weston to the city on the condition that the city would maintain and operate pursuant to the terms of its ordinances. It denied plaintiffs were injured by any default on its part. As a further defense it pleaded the provision of its ordinances duly enacted pursuant to statutory authority. The ordinances pleaded as a defense provided: (1) property owners were, under conditions in which plaintiffs were situate, required to install backwater or backpressure valves, and (2) the terms under which the city would provide sewerage service to property owners beyond the corporate limits. The portion of that ordinance material to this case follows: "Connections to the city sewer system outside the corporate limits shall be made in its entirety by the owner, his contractor or agent, under permit from the Public Works Department upon the payment of the required fee . . . All risks shall be assumed by the applicants and the owners of the property supplied with the sewer, and the city shall not be responsible for any damage or injury to person or property by reason of said system, its construction, maintenance or repair; the city shall not be liable to anyone for the proper operation or maintenance of the sewer system, or any part thereof . . ."

Plaintiffs offered evidence which was sufficient for a jury to find that defendant negligently failed to maintain or operate its sewer system; that it permitted the mains in the street in front of plaintiffs' home to break and stop up, thereby preventing the sewage from flowing to the pumping plant, creating a pressure in the mains sufficient to back the sewage up in the line connecting plaintiffs' homes with the mains, overflowing the fixtures and flooding the homes; that the connection between the mains in the street and the fixtures in the plaintiffs' homes was made by or under the supervision of the city and without the installation of the back-pressure valves called for in the ordinance pleaded by defendant.

In addition to the negligence alleged as the basis of plaintiffs' causes of action, they offered evidence sufficient for a jury to find that the negligent failure of defendant to maintain and operate this system caused the sewage to overflow from the manholes in the streets, flooding the streets, and from the flooded streets onto the properties of plaintiffs, that this sewerage passing from the mains out of the manholes and onto the lands of plaintiffs caused serious damage to their property, left it in a foul condition and created a hazard to the health of plaintiffs and members of their families.

Defendant, at the conclusion of the evidence, moved for non-suits. Its motions were denied. It tendered issues based on the pleadings. The court declined to submit the issues so tendered, but as determinative of defendant's liability submitted an issue in each case reading: "Was the plaintiffs' property, located on . . . damaged by a nuisance created by the negligence of. the defendant, as alleged in the Complaint?"

The court charged the jury in accord with the defendant's contention, that plaintiffs, nonresidents of the city, connected with the sewer system of their own volition and because of the contractual relationship, under the ordinance exculpating defendant from liability for negligence, no damage could be recovered which resulted from the flooding of the homes by backing sewage into and overflowing the fixtures in the homes. He further charged that the failure to maintain the system and the resulting flooding of the streets from the manholes and the drainage of this sewage onto the lots of plaintiffs was a nuisance or trespass for which damages could be awarded.

Defendant excepted to the issues submitted and to the charge permitting plaintiffs to recover on the basis of damage resulting from a nuisance created by defendant's negligence. The exceptions assigned as error present two questions:

(1) Validity of a contract (city ordinance) which relieves a city from liability for damages resulting from a negligent failure to furnish services contracted for.

Plaintiffs maintain the invalidity of the ordinance. They assert that they were, by the provisions of the city's charter, compelled to connect with the sewer system, and as they acted under compulsion, they were entitled to compensation for the damages proximately resulting from compliance. They also assert that the ordinance denying liability for the negligent breach of the contractual obligation is contrary to public policy and void. The provisions of the city's charter form the basis of the assertion that plaintiffs had no freedom to contract but were compelled to connect with the city's sewerage system.

The charter authorizes the city to construct and operate a sewerage system, granting to the city the power of eminent domain for that purpose. Following this general grant of the power of eminent domain, the charter provides: ". . . and if it shall be necessary, in obtaining a proper outlet to said system, to extend the same beyond the corporate limits, to condemn a right of way to and from such outlet, it shall be done as herein provided for opening new streets and other public purposes; and in addition thereto said Board of Aldermen shall have power and authority to compel *citizens* living along the line of sewerage or in the vicinity thereof to connect their premises, drain or other

12—247

pipes with said sewerage, so as to drain all of the premises along the line of said sewerage, and on default of the owner to make such connection the City can have such connection made and the costs thereof charged against the owner of the property . . ." (Italics added.)

The fallacy of the position taken by plaintiffs that they were compelled to act and deprived of any freedom to contract is apparent from a casual reading of the charter provision on which they depend. First, it is a mere grant of power. It is not self-executing. There is neither proof nor allegation that the city has undertaken to exercise the power granted. Second, the power of compulsion granted to the city applies to *citizens,* that is citizens of Winston-Salem. Plaintiffs are not citizens of Winston-Salem.

A municipal corporation, city or town, is an agency created by the State to assist in the civil government of a designated territory and the people embraced within these limits. *Lee v. Poston,* 233 N.C. 546, 64 S.E. 2d 835. Its charter is the legislative description of the power to be exercised and the boundaries within which these powers may be exercised. Neither city charter nor ordinance enacted pursuant thereto have extraterritorial effect unless authorized by legislative grant. *Holmes v. Fayetteville,* 197 N.C. 740, 150 S.E. 624; *S. v. Eason,* 114 N.C. 787; *Dean Milk Co. v. Aurora,* 14 A.L.R. 2d 98; *Hyre v. Brown,* 49 A.L.R. 1230 and annotations; *Donable v. Harrisonburg,* 104 Va. 533, 7 Ann. Cas. 519; 37 Am. Jur. 736.

In *S. v. Gulledge,* 208 N.C. 204, 179 S.E. 883, Schenck, J., quoted from Dillon on Municipal Corporations as follows: "It is a general and undisputed proposition of law that a municipal corporation possesses, and can exercise, the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied; third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied."

Interpreting the language of the city's charter in the light of uniform decisions, it is apparent that the quoted provision was not a grant of power to the city of Winston-Salem to compel people residing outside of but "living along the line of sewerage or in the vicinity thereof" to use the city's sewerage system.

The specific authority granted to Winston-Salem by its charter provision is substantially in accord with the authority given all municipalities. G.S. 160-240. The authority granted by that section was interpreted in *Construction Co. v. Raleigh,* 230 N.C. 365, 53 S.E. 2d 165. It was there said: "Obviously the municipal-

ity is not authorized by the statute, to compel owners of improved property located outside the city, but which may be located upon or near one of its sewer lines or a line which empties into the City's sewerage system, to connect with the sewer line but since it is optional with a city as to whether or not it will furnish water to residents outside its corporate limits and permit such residents to connect their sewer facilities with the sewerage system of the city, or with any other sewerage system which connects with the city system, it may fix the terms upon which the service may be rendered and its facilities used."

It is not suggested that the statute, G.S. 160-234, giving municipalities the power to remove and abate conditions inimical to health suffices to authorize the City of Winston-Salem to compel people outside of its corporate limits to connect to its sewerage system.

When plaintiffs, with the assent of defendant, connected their sanitary facilities with defendant's main, defendant impliedly contracted to furnish services reasonably suitable to plaintiffs' need and not to injure plaintiffs by a breach of their contractual obligation. Defendant, in furnishing these services, was acting in a proprietary capacity. *Asbury v. Albemarle,* 162 N.C. 247, 78 S.E. 146.

Courts have prohibited corporations performing public services from exempting themselves for liability for their negligence when to do so was contrary to public policy. *Hall v. Refining Co.,* 242 N.C. 707, 89 S.E. 2d 396; *Furniture Co. v. Baron,* 243 N.C. 502, 91 S.E. 2d 236; *Kennerly v. Dallas,* 215 N.C. 532, 2 S.E. 2d 538; *Brown v. Brown,* 213 N.C. 347, 196 S.E. 333.

Here the Legislature has spoken. It has said with respect to services furnished nonresidents the rates may be based on nonliability for breach of contractual obligations. G.S. 160-249.

Hence the ordinance constituting the contract between the parties made voluntarily and with legislative sanction is valid and binding. Plaintiffs cannot recover for damages done by backing sewage in their homes through the connection between their homes and the city's mains.

(2) Right of plaintiffs in this action to recover damages resulting from the flowing of sewage directly from the city's mains on plaintiffs' property.

The answer is found by examining the pleadings to ascertain the wrong assertedly done plaintiffs. It may be conceded that the evidence offered by plaintiffs is sufficient to base an action in tort totally unrelated to defendant's contractual obligation to provide services. *Johnson v. Winston-Salem,* 239 N.C. 697, 81 S.E. 2d 153; *Veazey v. Durham,* 231 N.C. 357, 57 S.E. 2d 377; *Gore v. Wilmington,* 194 N.C. 450, 140 S.E. 71; *Moser v. Burling-*

*ton,* 162 N.C. 141, 78 S.E. 74. But this evidence cannot avail plaintiffs unless they have asserted this tortious conduct as a wrong which the court should redress. "Recovery must be based on the cause of action alleged. It cannot rest on a different legal right." *Wynne v. Allen,* 245 N.C. 421, 96 S.E. 2d 422, and cases cited.

Plaintiffs' pleadings, construed liberally to encompass all wrongs asserted, are in our opinion confined to damages resulting from the contractual relationship and do not encompass damages resulting from a potential right of action distinct from defendant's contractual obligation.

It follows that defendant's motion to nonsuit, made upon the conclusion of the evidence, should have been allowed. This conclusion renders unnecessary any discussion of the measure of damages on a cause of action not alleged.

Reversed.