DUKE POWER COMPANY AND HALL PRINTING COMPANY v. CITY OF HIGH POINT AND PAUL CLAPP, MAYOR OF THE CITY OF HIGH POINT, RACHEL GRAY, O. ARTHUR KIRKMAN, ARNOLD KOONCE, JR., ROY B. CULLER, SAMUEL BURFORD, FRANK WOOD, ROBERT O. WELLS AND JAMES L. PEARCE, JR., MEMBERS OF CITY COUNCIL OF HIGH POINT, NORTH CAROLINA, LONNIE C. WILLIAMS, JR., DIRECTOR OF PUBLIC UTILITIES, CITY OF HIGH POINT, AND HAROLD CHEEK, CITY MANAGER, CITY OF HIGH POINT

No. 7418SC428

(Filed 19 June 1974)

1. Utilities Commission § 4— jurisdiction over power company

The N. C. Utilities Commission has general and supervisory jurisdiction over the retail electric rates and service charged and rendered by plaintiff power company. G.S. 62-1, *et seq.*

---

Power Co. v. City of High Point

---

2. **Utilities Commission § 4; Electricity § 2; Municipal Corporations § 4—public utility operating in city — control by Utilities Commission**

   Plaintiff power company may not abandon service to any customer without the consent of the customer or authorization of the Utilities Commission; and the power of defendant municipality to grant franchises to public utilities for the use of its streets and to provide service to its citizens must yield to the paramount right of the State to regulate, through the Utilities Commission, public utilities even when they are operated within the corporate boundaries of a municipality. G.S. 62-118; G.S. 62-38.

3. **Municipal Corporations § 1— powers of city given by State**

   A city or other municipal corporation is a creature of the State and has no power except that given by the State.

4. **Electricity § 2; Municipal Corporations § 23; Utilities Commission § 4—franchise for power company — operation of power company by city — jurisdiction of Utilities Commission**

   A city in this State has authority to grant, upon reasonable terms and for a period of not more than sixty years, a franchise for the operation of an electric power transmission or distribution system within the city, and a city also has the power to operate its own electric power transmission or distribution system, which system is not subject to the control and jurisdiction of the Utilities Commission. G.S. 160A-319; G.S. 160A-311; G.S. 62-3(23)d.

5. **Electricity § 2; Municipal Corporations § 4; Utilities Commission § 4—substitution of city power for that of public utility — injunction proper**

   The trial court properly granted plaintiffs' motion for summary judgment in an action to enjoin defendant city from disconnecting plaintiff utility company's lines serving plaintiff printing company, from connecting the city's power lines to the printing company, and from serving the printing company absent a request by the printing company for service from the city or an order of the Utilities Commission authorizing plaintiff utility company to abandon service to the printing company.

APPEAL by defendants from *Exum, Judge,* 7 January 1974 Session of Superior Court held in GUILFORD County.

This is a civil action instituted by Duke Power Company (Duke) and Hall Printing Company (Hall) on 16 February 1973, asking that defendants, the City of High Point, its officials and employees, be enjoined from disconnecting Duke's power lines serving Hall, from connecting High Point's lines to Hall, and from serving Hall absent a request by Hall for service from High Point or an order of the North Carolina Utilities Commission authorizing Duke to abandon service to Hall. On the same date, the court issued a temporary restraining order, and, following a hearing, on 30 March 1973, entered a preliminary injunc-

tion as requested by plaintiffs. On 12 March 1973, defendants filed their answer.

On 17 August 1973, plaintiffs moved for judgment on the pleadings pursuant to G.S. 1A-1, Rule 12, or, in the alternative, summary judgment pursuant to Rule 56. On 21 August 1973, defendants filed a "motion for pretrial conference and order limiting issues for trial" and at the same time filed, as an exhibit to the motion, a document designated as "Plan of Acquisition of Duke Power Company's Electrical Customers and Facilities by the City of High Point June 21, 1973." On 24 August 1973, pursuant to Rule 56, defendants filed motion for summary judgment "in the defendants' favor dismissing the action on the ground that there is no genuine issue as to any material fact and that the defendants are entitled to a judgment as a matter of law."

Following a hearing, the court filed on 8 January 1974 the following judgment:

"This cause came on for hearing in chambers before the Honorable James G. Exum, Jr., Resident Judge of the Superior Court, upon plaintiffs' 'Motion for Judgment on the Pleadings or Summary Judgment' filed August 17, 1973; defendants' 'Motion for Pretrial Conference and Order Limiting Issues for Trial' filed August 21, 1973; and defendants' 'Motion for Summary Judgment' filed August 24, 1973. The parties entered into a written stipulation providing for waiver of further notice of hearing as to said motions, for leave to file briefs and reply briefs, and agreement that the undersigned Resident Judge could hear and determine said motions out of term and in chambers.

"Based on the verified complaint, as amended, and the defendants' answer thereto, the court finds and concludes that there is no genuine issue as to any material fact; that only questions of law on the indisputable facts are in controversy; and that this case is therefore properly before the court for a determination on the merits.

"Based upon the verified complaint, as amended, the defendants' answer thereto, as well as such affidavits and other matters as have been submitted and being fully advised in the premises, the court makes the following

## "FINDINGS OF FACT

"1. Plaintiff Duke Power Company ('Duke'), a North Carolina corporation, with general offices located at 422 South Church Street, Charlotte, North Carolina, is a public utility engaged in the generation, transmission and distribution of electric power and energy for sale to the general public in the States of North Carolina and South Carolina.

"2. Plaintiff Hall Printing Company ('Hall'), a North Carolina corporation, is engaged in the business of commercial printing and lithography at 135 South Hamilton Street, High Point, North Carolina.

"3. The defendant City of High Point ('City'), is a municipal corporation organized and existing under the laws of the State of North Carolina. The City in its proprietary function furnishes electric service to citizens and residents of the City through a distribution system owned by it.

"4. Prior to February 9, 1969, Duke rendered electric service to certain customers in the City, pursuant to a franchise issued by the City to John Leddy and his assigns dated February 9, 1909, and thereafter assigned to Duke. Said franchise expired on February 9, 1969, and was not renewed.

"5. In March of 1971, the City advised Duke by letter (Complaint, Exhibit A) that Duke would not be allowed to serve any new customers within the City and that the City intended 'to eventually serve all electric customers within the City limits.' By letter dated January 3, 1973 (Complaint, Exhibit B), the City advised that it intended to serve certain customers in specified areas of the City and that Duke must discontinue serving such customers in the named areas, one of said customers being Hall. Said letter further advised Duke that its wires in the designated areas 'were to be removed without permission to relocate them.'

"6. Duke has been furnishing retail electric service to the premises of Hall for at least the past fifty years. Over the years Duke and Hall have entered into contracts for such electric service, the latest contract being dated October 30, 1973 (Complaint, Exhibit C), under which Duke is presently furnishing retail electric service for power to Hall on rate schedule GA, said rate schedule being on file

with and approved by the North Carolina Utilities Commission.

"7. By letter of February 14, 1973 (Complaint, Exhibit D), the City advised Duke that the City would commence furnishing electric service to Hall as of February 17, 1973, and that Duke's electric service to Hall 'must be discontinued.' The City proceeded to accomplish same by installing all wires and associated equipment necessary to furnish electric service for power to Hall. Additionally, the City, through its agent, advised Hall or its agents that if Hall did not accept the City's electric service that Hall would have no electric service for power because the City intended in any event to cut off Duke's electric service to Hall, thereby depriving Hall of any source of electric power and supply, whatsoever.

"8. Hall desires to continue its contract for electric service with Duke (Complaint, Exhibit C) in full force and effect and does not desire that the City furnish electric service to its premises for power purposes because such service and the rates charged therefor are not regulated and are subject to change at the will of the City. The North Carolina Utilities Commission has not authorized Duke to abandon electric service to the plaintiff Hall.

"9. By letter dated February 14, 1973 (Complaint, Exhibit E), Hall advised the City that it had a contract with Duke and that it desired that such contract remain in full force and effect and further advised the City that it should refrain from entering Hall's premises in connection with the furnishing of electric service now being furnished by Duke or the discontinuance of such service.

"10. On March 30, 1973, this court entered an order granting plaintiffs' motion for preliminary injunction pending a final determination of this case on the merits.

"11. On August 21, 1973, the defendants filed a 'Motion for Pretrial Conference and Order Limiting Issues for Trial' which included a document entitled 'Plan of Acquisition of Duke Power Company's Electrical Customers and Facilities by the City of High Point, June 21, 1973.' Under said 'Plan,' the City has unilaterally undertaken to determine the method and sequence by which it shall take over all of Duke's customers and purchase, at the City's option,

certain of Duke's facilities providing electric service to such customers over a three-year period.

"Based on the foregoing FINDINGS OF FACT, together with briefs and arguments by counsel for plaintiffs and defendants, the court makes the following

## "CONCLUSIONS OF LAW

"A. The North Carolina Utilities Commission has general and supervisory jurisdiction over the retail electric rates and service of Duke Power Company pursuant to the North Carolina Public Utilities Act, N.C.G.S. 62-1, et seq.

"B. Duke may not abandon service to any customer without the consent of such customer or authorization of the North Carolina Utilities Commission pursuant to G.S. 62-118. The protection afforded utility customers by G.S. 62-118 is extended by G.S. 62-138 (sic) to those, like Hall, who are located within municipal limits as well as those without such limits. G.S. 62-38 grants the North Carolina Utilities Commission 'the same power and authority to regulate the operation of privately owned public utilities within municipalities as it has to regulate such public utilities operating outside of municipalities.'

"C. The power of a municipality, such as the City of High Point, to grant franchises or permits to public utilities for the use of its streets must yield to the paramount right of the State of North Carolina to regulate public utilities, such as Duke, through the North Carolina Utilities Commission even though such public utilities are operating within the corporate boundaries of a municipality. Accordingly, this court has no jurisdiction to approve the 'Plan of Acquisition of Duke Power Company's Electrical Customers and Facilities by the City of High Point, June 21, 1973.' Approval of said 'Plan' must be sought in a proceeding properly brought before the North Carolina Utilities Commission to determine whether it meets the test of public convenience and necessity as required by N.C.G.S. 62-118.

"D. Unless the defendants are enjoined from performing the acts and conduct as set forth in paragraphs 7 and 11, above, irreparable harm, damage, and injury will be done to the plaintiff Hall in that such acts and conduct will deprive Hall of its LEGAL RIGHTS afforded by the public utility laws of the State of North Carolina, particularly

N.C.G.S. 62-118, and Hall would be without electric service for power for an undetermined period of time, and for all of which plaintiff Hall has no adequate remedy at law.

"E. Unless the defendants are enjoined from performing the act and conduct as set forth in paragraph (sic) 7 and 11, above, irreparable harm, damage and injury will be done to the plaintiff Duke Power Company in that such acts and conduct would force Duke to violate its statutorily imposed public utility obligation not to abandon electric service to its customers without authority from the North Carolina Utilities Commission to do so upon a finding that public convenience and necessity require such abandonment (N.C.G.S. 62-118), and for all of which plaintiff Duke Power Company has no adequate remedy at law.

"F. The City's 'Plan' to take over Duke's customers and certain of its facilities serving those customers is a matter substantially affecting the public interest and unless the defendants are enjoined from performing the acts and conduct as set forth in paragraphs 7 and 11, above, they will begin serving Duke's customers within the corporate boundaries of the City without any determination as of whether or not such action is in the interest of the general public, which action will result in irreparable harm, damage and injury to the general public, including plaintiffs herein, and for which there is no adequate remedy at law. On the other hand, the City has an adequate remedy at law in that under N.C.G.S. 62-136(b) the City has the RIGHT to institute a proceeding before the North Carolina Utilities Commission to determine whether or not the City's 'Plan' meets the test of public convenience and necessity as required by N.C.G.S. 62-118.

"G. The plaintiffs' motion for summary judgment should be granted.

"NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED:

"1. That defendants, their agents, servants, and employees, and all other persons in active concert with them be, and each of them is, hereby permanently restrained and enjoined from discontinuing Duke Power Company's electric service to Hall Printing Company by cutting and disconnecting the wires and associated equipment of Duke

Power Company now located on the premises of Hall Printing Company, 135 South Hamilton Street, High Point, North Carolina; from attaching the City's wires and associated equipment to said premises thereby DISPLACING Duke's wires and equipment; from entering upon the premises of Hall in connection with furnishing of or discontinuance of electric service not now being furnished by the City unless and until Hall consents to the discontinuance of Duke's electric service or the North Carolina Utilities Commission authorizes Duke to abandon service to Hall as required by N.C.G.S. 62-118.

"2. (Has been deleted and crossed out and initialed 'JE.')

"3. The acts which any person as aforesaid are hereby permanently enjoined and restrained from doing, they and each of them likewise are hereby enjoined and restrained from enforcing, executing and administering, aiding or procuring or causing them to be done.

"4. That the $5,000 bond heretofore given by plaintiffs upon the issuance of the preliminary injunction shall be returned to plaintiffs and the costs of this action shall be taxed against the defendants.

"Signed and ordered entered this 7th day of January 1974.

"s/ JAMES G. EXUM, JR.
"Resident Superior Court Judge"

Defendants appealed.

*Tally & Tally, by J. O. Tally, Jr., and James D. Garrison, and Knox Walker for defendant appellant.*

*Morgan, Byerly, Post & Herring, by W. B. Byerly, Jr., and William H. Grigg, by George W. Ferguson, Jr., for plaintiff appellees.*

BRITT, Judge.

Did the court err in the entry of the judgment? Except as hereinafter set forth, we hold that it did not.

Regarding the facts set forth in the judgment, we call attention to paragraph 11 and defendants' document entitled "Plan

of Acquisition of Duke Power Company's Electrical Consumers and Facilities by the City of High Point, June 21, 1973." Considering the pleadings in this case, we do not think the document referred to had any standing in the proceedings, and the court should not have set forth any facts predicated on it. Defendants go so far as to ask the court to approve the plan proposed in the document, when there is no reference in the pleadings to it. In their answer, defendants asked for no affirmative relief, only that plaintiffs be denied relief and that the action be dismissed. In fact, the document was filed more than five months after the answer was filed and four days after plaintiffs filed their motion for judgment on the pleadings or summary judgment.

With respect to the conclusions of law made by the court, we will discuss them in the order set forth in the judgment.

[1]   A. It is clear that the North Carolina Utilities Commission has general and supervisory jurisdiction over the retail electric rates and service charged and rendered by Duke. G.S. 62-1, et seq. It appears that defendants do not question this conclusion.

[2]   B and C. We agree that Duke may not abandon service to any customer, (subject, of course, to the customer paying his bill, etc.), without the consent of the customer or authorization of the Utilities Commission; and that the power of a municipality to grant franchises to public utilities for the use of its streets and to provide service to its citizens, must yield to the paramount right of the State to regulate, through the Utilities Commission, public utilities even when they are operated within the corporate boundaries of a municipality.

G.S. 62-118 provides in pertinent part: "Upon finding that public convenience and necessity are no longer served, or that there is no reasonable probability of a public utility realizing sufficient revenue from a service to meet its expenses, the Commission shall have power, after petition, notice, and hearing,. to authorize by order any public utility to abandon or reduce such service."

G.S. 62-38 provides: "The Commission shall have the same power and authority to regulate the operation of privately owned public utilities within municipalities as it has to regulate such public utilities operating outside of municipalites, with the exception of the rights of such municipalities to grant franchises for such operation under G.S. 160-2, paragraph 6, and

such public utilities shall be subject to the provisions of this chapter in the same manner as public utilities operating outside municipalities."

While the facts in *Power Co. v. Membership Corp.*, 253 N.C. 596, 117 S.E. 2d 812 (1961), are quite different from those in the case at hand, we think some of the principles declared there are applicable here. Included are the following (pages 604, 605 and 606, respectively) :

"The Legislature, by granting to municipalities the right to franchise, did not deprive itself of the power to control or to delegate to other public agencies the right to control specific utilities in whole or in part. That it did not intend to give exclusive or unlimited control to municipalities by grant of the right to franchise is, we think, apparent from other legislative acts."

\* \* \*

"The cited sections of our statute law clearly indicate, we think, a legislative delegation of power to the Utilities Commission to say when and under what conditions power companies shall furnish service, and this authority relates to service inside of as well as outside of municipalities. The reason for such legislative action is, we think, readily apparent. Except for those areas served by municipally owned plants or electric membership corporations, the citizens of the State depend primarily on four power companies, Duke, Carolina Power & Light, Virginia Electric & Power, and Nantahala Power & Light, to supply them with current. To invest each of the towns served by these companies with the power to regulate and prescribe and the manner in which service may be rendered inhabitants of the town might well lead to a chaotic condition seriously interfering with the ability of the utility to render equal service to all residing in the area served by it."

\* \* \*

"Courts called upon to determine final authority as between municipalities and State utilities commissions over the operation of public utilities have generally interpreted the statutes in favor of utilities commissions. The reasons are manifest. *Willits v. Pennsylvania Utilities Com'n.*, 128 A. 2d 105; *Jennings v. Connecticut Light & Power Co.*, 103 A. 2d 535; *City of Genesco v. Ill. Northern Utilities Co.*,

1 N.E. 2d 392; Annotation, 39 A.L.R. 1519. 'Generally, however, the power given by statute to public service commissions to supervise and regulate public utilities supersedes the power of municipalities to regulate such utilities, except where the power is specifically reserved to the municipalities.' 43 Am. Jur. 702."

[3]   A city or other municipal corporation is a creature of the State and has no power except that given by the State. 5 Strong, N. C. Index 2d, Municipal Corporations, § 1, page 602, et seq. In *State v. Gulledge,* 208 N.C. 204, 207, 179 S.E. 883, 885 (1935), we find:

> " 'It is a general and undisputed proposition of law that a municipal corporation possesses, and can exercise, the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied; third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied.' 1 Dillon Mun. Corp., sec. 89; *S. v. Webber,* 107 N.C., 962; *S. v. Darnell,* 166 N.C., 300."

Quoted with approval in *Smith v. Winston-Salem,* 247 N.C. 349, 354, 100 S.E. 2d 835, 839 (1957).

[2, 4]   Admittedly, a city in this State has authority to grant, upon reasonable terms and for a period of not more than 60 years, a franchise for the operation of an electric power transmission or distribution system within the city. G.S. 160A-319. A city also has the power to operate its own electric power transmission or distribution system, 160A-311, et seq., which system is not subject to the control and jurisdiction of the Utilities Commission, G.S. 62-3 (23) d. And, the Utilities Commission has the same power and responsibility to regulate the operation of privately owned public utilities within cities as it does their operation outside of cities. G.S. 62-38. Defendants argue that the city's right to grant a franchise gives it the right to oust a franchise holder, either wholly or gradually, when the franchise expires.

[5]   The record reveals that High Point owns and operates an electric power distribution system and desires eventually to sell electric power to all residents of the city. It admits, however, that it is not in position to take over all of Duke's customers at

one time. In fact, the "plan" which it filed proposes a gradual transfer of customers which would extend until June of 1976. Thus, Duke is placed in the position of (1) being subject to regulation of the Utilities Commission, (2) being subject to contractual and statutory obligations to Hall and others similarly situated, and (3) being told by defendant city how and when to stop serving various customers.

Controlling statutes must be construed *in pari materia*. In reconciling here what appears to be a conflict in the effect of the statutes with respect to authority of a municipality as opposed to the Utilities Commission, we are resolving the doubt against the municipality as directed in *State v. Gulledge, supra,* and cases therein cited, and in favor of the Utilities Commission as directed in *Power Co. v. Membership Corp., supra.*

While this does not bear directly on the question presented here, we observe that by the enactment of Chapter 287 (G.S. 160A-331, et seq.), the 1965 General Assembly took a considerable step in recognizing rights of non-municipal suppliers of electric power in cities operating their own systems.

We think our holding that Duke cannot abandon its service to Hall, absent its consent, without the approval of the Utilities Commission, finds support in cases from other jurisdictions. Among these are *City of Genesco v. Ill. N. Utility Co.,* 363 Ill. 89, 1 N.E. 2d 392 (1936), and in a second appeal, 378 Ill. 506, 39 N.E. 2d 26 (1941) ; and *C & P Tel. Co. v. City of Morgantown,* 144 W. Va. 149, 107 S.E. 2d 489 (1959).

For the reasons stated above, we hold that the last part of paragraph C of the conclusions of law set out in the judgment, beginning with the word "Accordingly," should be eliminated from the judgment. High Point's "Plan of Acquisition, etc." was not properly before the court and no adjudication as to it should be made in this action.

D and E. We approve the conclusions of law set forth in these paragraphs except that the provision in D "and Hall would be without electric service for power for an undetermined period of time" does not appear to be supported by the admitted facts; therefore, that provision will be eliminated.

F. This conclusion of law relates to High Point's "Plan of Acquisition" and for the reasons hereinbefore stated, it is eliminated from the judgment.

G. We hold that the allowance of plaintiffs' motion for summary judgment was proper.

\*   \*   \*

The adjudication and relief provided by the judgment are fully supported by the conclusions of law.

Except as hereinbefore modified, the judgment is affirmed.

Modified and affirmed.

Judges HEDRICK and CARSON concur.